Brink's Incorporated, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Miley Security Transport, Inc. et al., Intervenors.

Purolator Armored, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Miley Detective Agency, Inc. et al., Intervenors.

Argued February 2, 1983, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three. Reargued June 7, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MCPHAIL and DOYLE.

*Herbert R. Nurick, McNees, Wallace & Nurick,* for petitioner, Brink's Inc.

*James W. Patterson,* with him *Larry R. McDowell, Harper & Driver,* for petitioner, Purolator Armored, Inc.

*Eric A. Rohrbaugh,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Peter Platten,* for intervenors.

OPINION BY JUDGE MACPHAIL, August 23, 1983:

In these consolidated appeals, Brink's, Incorporated and Purolator Armored, Inc. (Petitioners) challenge an order of the Pennsylvania Public Utility Commission (PUC) which granted temporary contract carrier authority to the Miley Detective Agency, Inc. (Miley) pursuant to Section 2509 of the Public Utility Code (Code), 66 Pa. C. S. §2509.

In August, 1980, Miley filed an application for permanent authority to operate as a contract carrier by armored motor vehicle in sixteen eastern and central Pennsylvania counties. In March, 1981, Miley filed two additional applications for temporary authority to transport currency, coin and valuables to two specific customers in Philadelphia County from points in four counties not covered by the previously filed application for permanent authority. Petitioners filed protests to each of the applications alleging, *inter alia*, that Petitioners are contract carriers with authority to perform services within the scope of those sought to be performed by Miley and that an adverse impact on Petitioners' businesses would result if the applications were granted.

Miley subsequently challenged Petitioners' standing to protest its applications. The PUC, in an order entered June 29, 1981, limited Petitioner's standing to the issue of "unfair competition". The Petitioners' appeals to this Court from that order were quashed as being interlocutory.[1]

On December 10, 1981, the PUC entered an order adopting the bench decision of Administrative Law Judge (ALJ) PALLASTRONE which granted Miley's two

---

[1] *Brink's Incorporated v. Pennsylvania Public Utility Commission* (No. 1833 C.D. 1981, filed November 12, 1981) and *Purolator Armored, Inc. v. Pennsylvania Public Utility Commission* (No. 1866 C.D. 1981, filed November 12, 1981; *pet. for app.*, No. 652 E.D. Misc. 1981, Pa. Supreme Ct., denied June 30, 1982).

applications for temporary authority and, in addition, granted temporary authority for Miley to operate as a contract carrier in the sixteen county area proposed in its application for permanent authority. The ALJ's bench decision· was rendered following oral argument by counsel for Petitioners and Miley and without the taking of evidence.

Petitioners filed the instant timely appeals from the PUC order of December 10, 1981. Motions to quash the appeals were filed by Miley and the PUC and were denied by this Court in *Brink's Inc. v. Pennsylvania Public Utility Commission*, 68 Pa. Commonwealth Ct. 196, 448 A.2d 709 (1982).[2] The merits of the appeals are presently before us for disposition.

Our scope of review here is limited to a determination of whether the PUC committed an error of law, made fact findings which are not supported by substantial evidence or whether any violation of constitutional rights has occurred. *Burleson v. Pennsylvania Public Utility Commission*, 66 Pa. Commonwealth Ct. 282, 443 A.2d 1373 (1983), *aff'd* Pa. , 461 A.2d 1234 (1983).

Petitioners contend that the PUC's order granting temporary authority to Miley cannot stand because the PUC failed to find that an emergency existed which required the grant of temporary authority. The controlling statutory provision, Section 2509 of the Code, provides that:

> The commission, *under such regulations as it shall prescribe*, may, without hearing, in proper cases, consider and approve applications for permits and licenses, and *in emergencies*

---

[2] Miley and the PUC advanced two arguments in support of their motions to quash in *Brink's*: 1) that the appeals were interlocutory and 2) that Petitioners lacked standing to bring the appeals. Both arguments were addressed and rejected.

*grant temporary permits* and licenses under this chapter, pending action on permanent permits or licenses; but no application shall be denied without right of hearing thereon being tendered the applicant. (Emphasis added.)

The interpretation of Section 2509 presents a case of first impression. Moreover, our interpretation has not been aided by PUC regulations, since the PUC concedes that it has not, to date, promulgated specific regulations as required by the Legislature in Section 2509. Petitioners contend that in the absence of the required regulations the PUC is without power to grant temporary authority under Section 2509. While we do not condone the PUC's failure to promulgate the mandated regulations, we need not rule on the issue presented by Petitioners since even assuming that the PUC *can* act without regulations, the PUC's decision must nevertheless be reversed.

Section 2509 clearly requires that an emergency exist before a grant of temporary authority may be ordered. The bench decision of the ALJ, as adopted by the PUC, contains the following pertinent fact findings:

2. The Commission has authority to grant temporary authority to applicants;

3. That based on the Orders of the Commission of September 29, 1981[3] and August 24, 1981, it would appear that *it would be to Miley's economic detriment* not to grant the temporary authority.... (Emphasis added.)

Thus, the ALJ's grant of temporary authority is not supported by a specific finding that an emergency ex-

---

[3] Since the final bench order of the ALJ was dated September 17, 1981 we think that the ALJ's reference to a PUC order of September 29, 1981 was in error. We suspect that the ALJ intended to cite to the PUC's order of June 29, 1981 wherein it limited Petitioners' standing to the issue of unfair competition.

isted, but rather, by a finding that economic detriment would result if the authority was denied. Without ruling on the issue of whether the potential for economic detriment can rise to the level of an "emergency" under Section 2509, we observe that due to the ALJ's failure to conduct an evidentiary hearing, there is no evidence of record to support the ALJ's finding. The ALJ's finding appears to be based on the PUC's statement, in an opinion and order dated August 24, 1981, that to stay proceedings on Miley's applications, as had been requested by Brink's, would "Adversely effect Miley" because a lengthy stay would be tantamount to a dismissal of Miley's application. Regardless of the merit of the PUC's assertion, we cannot agree that such a statement, made in a context different from that which was presented to the ALJ, can be the sole support for the grant of temporary authority under Section 2509 of the Code. In light of the absence of record evidence, we must conclude that no finding of an emergency could properly be made in the instant case. The order of the PUC granting temporary authority must, accordingly, be reversed.

In addition to the lack of a proper finding that an emergency existed in this case, other procedural irregularities in the proceedings below warrant our attention. As Petitioners have pointed out, the record indicates that the ALJ's original bench decision differed from his final order in that the former granted temporary authority only as to Miley's two formal applications for such authority while the latter also granted temporary authority for the sixteen county area described in Miley's permanent authority request. This procedure and our review of the record raises a serious question as to the validity of the PUC's assertion in its brief that Petitioners were advised of the pendency of the "application". Petitioners claim that they had no notice that temporary authority with regard to the six-

teen county area was being considered by the PUC. In addition, the formal applications for temporary authority do not correspond to any permanent authority requests. Section 2509 provides that temporary permits may be granted "pending action on permanent permits". While we agree with the PUC that a grant of temporary authority need not precisely mirror the entire permanent authority request, our reading of Section 2509 indicates that temporary authority grants must at least correspond to a portion of a pending request for permanent authority (which might itself be more comprehensive in scope). We have found no authority for the proposition that temporary authority can exist independently of a permanent authority application.

Finally, Petitioners contend that the ALJ and PUC orders granting temporary authority are a nullity because they were entered while an appeal was pending with this Court, and later with our Supreme Court, from the PUC's order of June 29, 1981 on the issue of Petitioners' standing. Petitioners' contention on appeal was that they should be entitled to participate on the fitness issue as well as the issue of unfair competition. The only issue in a temporary authority proceeding, however, is whether an emergency exists which warrants immediate action under Section 2509 of the Code. Since the fitness issue was not involved in the instant proceedings, we perceive no bar to the ALJ and PUC's consideration of the collateral temporary authority request. *See* Pa. R.A.P. 1701(c).

Order reversed.

## ORDER

The order of the Pennsylvania Public Utility Commission, entered December 10, 1981, is hereby reversed.