In Re: NOMINATION PAPERS OF Marakay ROGERS, Christina Valente and Carl J. Romanelli as Candidates of an Independent Political Body for Governor, Lieutenant Governor and U.S. Senator in the General Election of November 7, 2006.

William R. Caroselli, Fred R. Levin, Daniel J. Anders and Peter D. Winebrake, Petitioners.

Commonwealth Court of Pennsylvania.

Heard Aug. 23, 2006.
Decided Aug. 24, 2006.
Publication Ordered Dec. 19, 2006.

Clifford B. Levine, Pittsburgh, for petitioners.

Lawrence M. Otter, Doylestown, for respondents.

OPINION BY President Judge COLINS.

Carl Romanelli, Green Party candidate for U.S. Senate, (Candidate) has filed a "Motion for Emergency Relief to Correct the Number of Signatures Required for a Minor Party Candidate for the United States Senate in 2006." The issue raised appears to be one of first impression in Pennsylvania and of considerable importance to the parties in this case as well as future independent or third-party candidates for office.

Section 912.1 of the Election Code, Act of June 3, 1938, P.L. 1333, *as amended,* 25

P.S. § 2872.1, requires that a petition for nomination at a party primary election for United States Senator must contain two thousand valid signatures.[1] In order for a candidate of a "minor political party" to appear on the ballot for the General Election, the candidate must file nomination papers containing a number of signatures "at least equal to two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election in which Statewide candidates were voted for." Section 951(b) of the Election Code, 25 P.S. § 2911(b).

In the General Election of 2004, Bob Casey, Jr., was elected to the office of Treasurer with a total of 3,353,489 votes. Applying the two percent rule, the Secretary of the Commonwealth calculated that nominating papers from an independent or minor party candidate must contain 67,070 valid signatures. Candidate filed papers facially containing more than 94,000 signatures, of which some 69,000 individual signatures have been challenged. Additional challenges to circulators affidavits are also at issue.

■ In his present petition, Candidate suggests that the two percent calculation should not be based on Bob Casey's votes in the 2004 General Election, but rather on the votes cast in the statewide judicial retention election held in 2005. In that election, Justice Sandra Shultz Newman was retained as a justice of the Pennsylvania Supreme Court with a total of 797,465 "Yes" votes. Candidate maintains that Justice Newman's "election" to a statewide office in 2005 meets the requirements of Section 951(b) insofar as it is the "last preceding election at which State-wide candidates were voted for." Should Justice Newman's numbers be used instead of Bob Casey's, the required number of signatures would be 15,949 instead of 67,070.

While Candidate's argument is facially appealing, we are constrained to disagree. Our analysis begins with the language of the statute, requiring two per centum of the largest entire vote cast **"for any elected candidate in the State at large at the last preceding election at which Statewide candidates were voted for."**

Article V, Section 13 of the Pennsylvania Constitution states that justices, judges, and justices of the peace "shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve." Article V, Section 15(a) provides that the regular term of office of justices and judges shall be ten years. Article V, Section 15(b) further provides that a judge **elected** under Section 13(a) "may file a declaration of candidacy for retention election...." Section 15(b) further provides that "[i]f a justice or judge files a declaration, his name shall be submitted to the electors without party designation, on a separate judicial ballot or in a separate column on voting machines, at the municipal election immediately preceding the expiration of the term of office of the justice or judge, **to determine only the question whether he shall be retained in office.** ... If a majority favors retention, **the justice or judge shall serve for the regular term of office provided herein, unless sooner removed or retired.**" (Emphasis added.)

In *Abraham v. Shapp*, 484 Pa. 573, 400 A.2d 1249 (1979), our Supreme Court discussed the difference between a retention election and a contested election. Chief Justice Eagen, writing for four members of a 6–justice Court, noted that

---

1. Section 912.1 was added by the Act of Dec. 12, 1984, P.L. 968, *as amended.*

Retention and election processes are distinct processes. Retention as used herein refers to the process by which the electors determine whether a judicial officer shall remain in his position as set forth in Pa. Const. art. 5, § 15(b)(1968), or, more commonly, it refers to a "yes-no" determination. Election refers to the process by which the electors determine which person out of the number properly seeking the judicial position shall occupy it.

484 Pa. at 576, n. 1, 400 A.2d at 1250, n. 1.

At issue in *Abraham* was whether the General Assembly could constitutionally provide for retention of a judge who had not been elected initially. Justice Eagen concluded that Section 13(a) of Article V "sets forth a general mandate that judges are to be elected." 484 Pa. at 577, 400 A.2d at 1251. Section 15(b), according to Justice Eagen, specifically exempts certain persons from the general mandate of Section 13(a) and permits those specific persons to file for retention elections. Justice Eagen dismissed the argument that retention "is an election process," concluding that "[u]nlike the term 'election,' retention is specifically defined in the Constitution. Pa. Const. art. 5, § 15(b). Furthermore, section 13(c) and 15(b) mandate and allow the election and retention processes under specifically defined circumstances. Such specific delineation would hardly be necessary were it intended to equate the processes." *Id.* at 581, 400 A.2d at 1253.[2]

Although we view *Abraham* as dispositive on this issue, we further note that Candidate's theory would present other problems. Section 951(b) requires two per centum "of the largest entire vote cast for any elected candidate in the State at large...." In the case of a candidate in a contested election, the "largest entire vote" is readily ascertainable, as electors vote only **for** a particular candidate. In a retention election, however, the vote is not **for** a candidate but rather limited to the question of whether the candidate for retention should be retained. The candidate for retention, whether successful or not, is not "elected" but either remains in office for another term or does not. In the latter case, an election is scheduled for the succeeding municipal election. Assuming, *arguendo*, that a candidate for retention is "elected," the "largest entire vote cast" for that candidate would appear to include both "Yes" and "No" votes.

Finally, we point out that at least one other jurisdiction has concluded, contrary to the result in *Abraham,* that a retention election is still an election, albeit one with a narrow scope. *See Hornsby v. Campbell,* 480 S.E.2d 189 (Ga.1997), and cases cited therein. Were we considering the matter on a clean slate, we might well agree, as the inclusion of a statewide retention election to determine the 2 percent figure would produce no greater variation than does the current system. Two years ago, for example, an independent candidate for President of the United States was required to submit papers containing 25,697 valid signatures, a number based on the 1,284,850 votes cast for Supreme Court Justice Max Baer in the 2003 Municipal election. Had there been a statewide judicial election in 2005, the number of signatures needed by Candidate would no doubt be considerably less than 67,000. The 2 percent rule, therefore, produces a result where a U.S. Senate candidate is required

**2.** Justice Manderino filed a dissenting opinion in *Abraham,* opining that a retention election is still an election. Had Justice Manderino's view prevailed, we would agree with Candidate that Justice Newman's total number of "Yes" votes in the 2005 retention election would be the operative number for calculating two per centum.

to submit 250 percent of the signatures required for a presidential candidate.

 Because we find *Abraham v. Shapp* controlling on this issue, we are constrained to deny Candidate's motion. We are, however, of the opinion that our order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from our order may materially advance the ultimate termination of the matter. Therefore, we shall certify this matter for appeal by permission pursuant to 42 Pa.C.S. § 702(b) and Pa. R.A.P. 1311(b). Although the ultimate resolution of this issue may prove dispositive of the case, we are of the view that this Court may (and indeed must) proceed on the signature challenges and other related issues during the pendency of any appeal. We reach such conclusion under the authority of Pa. R.A.P. 1701(c)(where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, the appeal shall operate to prevent the trial court from proceeding further only as to such item, claim or assessment). *See Brink's, Inc. v. Pa. Public Utility Commission,* 76 Pa.Cmwlth. 496, 464 A.2d 639 (1983)(commission had jurisdiction to proceed on temporary authority issue while standing issue was on appeal). Accordingly, we enter the following ORDER.

### ORDER

NOW, August 24, 2006, Candidate's "Motion for Emergency Relief to Correct the Number of Signatures Required for a Minor Party Candidate for the United States Senate in 2006" is DENIED. The Court is of the opinion that our order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from our order may materially advance the ultimate termination of the mat-

ter. Therefore, we shall certify this matter for appeal by permission pursuant to 42 Pa.C.S. § 702(b) and Pa. R.A.P. 1311(b).

In the event that a petition for permission to appeal is filed and granted, the Court further concludes that it retains jurisdiction to proceed in this matter under Pa. R.A.P. 1701(c) unless otherwise ordered by the Pennsylvania Supreme Court.