In Re: NOMINATION PAPER OF Marakay ROGERS, Christina Valente and Carl J. Romanelli as Candidates of an Independent Political Body for Governor, Lieutenant Governor and U.S. Senator in the General Election of November 7, 2006

**William R. Caroselli, Fred R. Levin, Daniel J. Anders and Peter D. Winebrake, Petitioners.**

Commonwealth Court of Pennsylvania.

Decided Jan. 24, 2008.

Publication Ordered Jan. 30, 2008.

---

Clifford B. Levine and Shawn N. Gallagher, Pittsburgh, for petitioners.

OPINION BY Senior Judge KELLEY.

This matter is currently before this Court on remand from our Supreme Court. On September 26, 2006, this Court filed an opinion and order granting the Petition to Set Aside the Nomination Paper of Carl J. Romanelli as Candidate of an Independent Political Body for U.S. Senator of the United States (Petition to Set Aside) filed by William R. Caroselli, Fred R. Levin, Daniel J. Anders and Peter D. Winebrake (hereinafter referred to as "Petitioners"). *See In Re: Nomination Paper of Rogers,* 914 A.2d 457 (Pa. Cmwlth.) (single judge opinion by Kelley, J.), *aff'd,* 589 Pa. 86, 907 A.2d 503 (2006). In its October 4, 2006 disposition, at docket number 108 MAP 2006, of this Court's September 26, 2006 order, the Supreme Court affirmed the September 26, 2006 order without prejudice to Carl J. Romanelli to seek review of the pending order of this Court imposing a final order of costs. Our Supreme Court further directed that this Court's final order assessing costs reference by category and amount assessed as well as a statement of rationale behind the imposition of these costs.

After an evidentiary hearing on January 9, 2007, this Court filed a memorandum opinion and order on January 24, 2007, approving in part and disapproving in part Petitioners' Bill of Costs and Related Fees and Expenses. The January 24, 2007 order provided, in relevant part, as follows:

> AND NOW, this 24th day of January, 2007, based on the evidence presented at the January 9, 2007 evidentiary hearing on Petitioners' Bill of Costs and Related Fees and Expenses and in accordance with the foregoing opinion, said Bill of

Costs is approved in part and disapproved in part and Carl J. Romanelli and Lawrence M. Otter, Esquire, are directed to pay $80,407.56 to Petitioners within thirty days of the date of this order.

Carl J. Romanelli and Lawrence M. Otter, Esquire appealed this Court's January 24, 2007 order to the Supreme Court. By order of November 20, 2007, the Supreme Court affirmed in part and reversed and remanded in part. In that order, the Supreme Court stated as follows:

The case is **REMANDED** to the Commonwealth Court to amend its order to comply with the order of this Court of October 4, 2006 at 108 MAP 2006. In that order the Commonwealth Court was directed to issue a final order which included in its text an assessment of costs referenced by category and amount assessed as well as a statement of rationale behind the imposition of these costs. The amended final order of the Commonwealth Court will thereby serve to give future candidates notice of what actions on their part might justify the imposition of fees and costs.

In all other respects, the decision of the Commonwealth Court is affirmed.

*See In re Nomination Paper of Rogers,* — Pa. ——, 934 A.2d 696 (2007). Accordingly, the order which originally ac-

companied the January 24, 2007 opinion has been amended in accord with our Supreme Court's orders of October 4, 2006 and November 20, 2007. To the extent that the Supreme Court affirmed this Court's decision of January 24, 2007, the opinion is set forth in its entirety:

"Kelley, S.J.

On August 1, 2006, Carl J. Romanelli, Candidate, filed a Nomination Paper with the Secretary of the Commonwealth seeking to have his name printed on the Pennsylvania General Election Ballot in the General Election to be held on November 7, 2006, as an Independent Political Body Candidate for the Office of United States Senator.[1] The Secretary of the Commonwealth calculated that the Nomination Paper must contain 67,070 valid signatures in order for Candidate's name to appear on the ballot.[2] On August 8, 2006, Petitioners filed a Petition to Set Aside the Nomination Paper of Marakay Rogers, Christina Valente and Carl J. Romanelli as Candidates of an Independent Political Body for Governor, Lieutenant Governor and U.S. Senator of the United States (Petition to Set Aside), challenging the validity of over 69,000 signatures contained in Candidate's Nomination Paper.[3]

Counsel for Candidate and Petitioners entered into and filed with this Court an

**1.** On the various pages of his Nomination Paper, Candidate states that he is a member of the Pennsylvania Green Party.

**2.** This number is calculated under Section 951 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2911, by taking two percent of the "largest entire vote for any elected candidate in the State at large in the last preceding election at which Statewide candidates were voted for." This Court has previously determined that the relevant "last preceding election" was the election of Robert Casey, Jr., as Treasurer in the 2004 General Election rather than the retention vote of Justice Sandra Shultz Newman in

2005 General Municipal Election and because Casey garnered 3,353,489 votes in that election, this Court agreed with the Secretary of the Commonwealth that the two percent rule required 67,070 valid signatures. *See In re Nomination Papers of Rogers,* 913 A.2d 298 (Pa.Cmwlth. 2006) (single judge opinion by Colins, J.), *aff'd,* 589 Pa. 360, 909 A.2d 299 (2006).

**3.** On August 14, 2006, Marakay Rogers and Christina Valente filed a petition to withdraw their nomination papers, which was granted by this Court by order dated August 18, 2006.

Amended Joint Stipulation Certifying the Total Number of Signatures. Therein, counsel stipulated that the Nomination Paper consisted of 3,702 pages and originally contained 99,802 signatures. Counsel, after compromising their different counts, further stipulated that 5,973 signatures were struck as invalid before filing the Nomination Paper and therefore were invalid signatures leaving the number of signatures contained in the Nomination Paper prior to any other challenges or reviews as 93,829. Finally, counsel stipulated that the total number of signatures that Petitioners had to successfully challenge as invalid to set aside the Nomination Paper was at least 26,760.

■ This matter was originally assigned to then President Judge Colins, who two years ago oversaw the challenges to the nomination papers of Ralph Nader and Peter Camejo as candidates for President and Vice–President of the United States. The challenges in the Nader matter were similar in form to this matter in that it involved a minor political party seeking to secure candidates on the election ballot. Because the Statewide Uniform Registry

of Electors (SURE system) had not yet been implemented statewide, Judge Colins mobilized the entire resources of this Court in order to conduct an adequate review of the challenges within the required time frame.[4] Even utilizing this Court's full resources, we narrowly accomplished the task at hand within the statutorily imposed time limits.[5] Recognizing the strain that the Nader matter placed upon this Court and that the present matter involved a far greater number of signatures for review than was involved in the Nader matter,[6] Judge Colins determined that a timely resolution of this matter could only be achieved through extraordinary measures. These measures included unprecedented access by the parties and this Court to the SURE system, which has now been implemented statewide.

Accordingly, on August 9, 2006, Judge Colins issued a Memorandum and Pre–Hearing Order wherein he ordered counsel for Candidate and Petitioners to meet on Monday, August 14, 2006, at 8:30 a.m., with personnel of this Court and the Pennsylvania Department of State at the offices of the Department in Harrisburg to com-

4. Our Supreme Court recently pointed out this Court's Herculean effort in the Nader matter:

> [T]he Commonwealth Court dedicated monumental effort and resources to implement the standards for signature review that we addressed. The court provided detailed and comprehensive hearing procedures and schedules to promote fairness and efficiency with respect to the challenged signatures. The Commonwealth Court held weeks of hearings across the Commonwealth, with twelve judges conducting a line-by-line review of the challenged signatures in sixty-three counties.
>
> In addition to regular business hours, the court sat on evenings and weekends. The Commonwealth Court issued continuances regarding its regular hearing schedule to enable the judges to conduct these hearings.

*In re Nomination Paper of Nader*, 588 Pa. 450, 457, 905 A.2d 450, 454 (2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 995, 166 L.Ed.2d 712 (2007) (footnote omitted).

5. The sole and exclusive remedy for challenging a person's right to run for political office in Pennsylvania is provided by Section 977 of the Election Code, 25 P.S. § 2937. *See In re Nominating Petition of Esther M. Lee*, 525 Pa. 155, 578 A.2d 1277 (1990). Section 977 sets forth the procedure to be followed in pursuing an objection including a time schedule in which the various steps of the process must occur. *Id.*

6. The nomination paper in Nader contained 51,273 signatures, which upon review by this Court, only 18,818 were valid, far short of the 25,697 that were required by the Election Code.

mence a review of the challenged signatures utilizing the SURE system access with the goal of stipulating to the validity and invalidity of a substantial number of the over 69,000 signatures challenged. Judge Colins further ordered as follows:

2. Each party shall have present at that time at least nine individuals, in addition to counsel, who are capable of performing computer searches. These individuals will be given a short training session by Department personnel on how to perform SURE system searches. With the assistance of court personnel, the designated individuals of each party shall commence a review of the challenged signatures and shall tabulate, with the assistance of counsel, the numbers of challenged signatures found to be valid and those found to be invalid. Where no stipulation can be agreed upon by counsel, the parties shall stipulate to the information found on the SURE system, reserving only the legal issues for court consideration. Objectors shall have available copies of the objections for use by both parties in reaching stipulations....

3. At least 9 computer terminals will be available for this purpose between the hours of 8:30 a.m. and 5:00 p.m. beginning August 14, 2006 and continuing Monday through Friday until modified by order of this Court.... The parties are expected to work diligently and expeditiously to narrow the large numbers of challenges, with supervision by Court personnel.

Pursuant to Judge Colins' August 9, 2006 order, a review of the challenged signatures began on August 14, 2006 from 8:30 a.m. until 4:45 p.m. on weekdays for a six week period with the review totaling 29 days. During the review process, Judge Colins heard arguments on several pre-trial motions, conducted pre-trial confer-

ences, and issued subsequent orders. Evidentiary hearings on the Petition to Set Aside were conducted by the undersigned on September 14, 2006 and September 25, 2006.

During the September 14, 2006 evidentiary hearing, counsel for the parties submitted for the record, a documented joint stipulation, entitled Joint Stipulation Related to Calculation of Invalid Signatures (Joint Stipulation). The Joint Stipulation was marked as Exhibit P–38 and showed that Candidate did not have enough valid signatures to remain on the ballot. However, counsel further stipulated in the Joint Stipulation that, subject to Petitioners' pending Motion in Limine to Enforce Stipulations and to Identify any Evidence Candidate Intends to Present at the Hearing Seeking to Negate Stipulations and Pennsylvania Law, counsel for Candidate may attempt to rehabilitate invalid signatures. Finally, counsel stipulated that, as of the close of business on September 13, 2006, Candidate would have to rehabilitate at least 2,918 of the "invalid" signatures to remain on the ballot.

It was further stipulated in open court by counsel for the parties that each understood that the original proceedings would continue as ordered by this Court on August 9, 2006 and that the counting would continue utilizing the SURE system. Counsel also stipulated that the daily results of the ongoing counting would be considered as additional stipulations by counsel and that the daily results would be cumulative to the numbers of valid and invalid signatures as was stipulated by the Joint Stipulation entered into the record as Exhibit P38. Accordingly, counsel for the parties understood that the 2,198 figure, which represented the number of stipulated invalid signatures that Candidate would need to rehabilitate to remain on the ballot, would continue to rise significantly.

Next, the Court considered Petitioners' Motion in Limine and Candidate's assertion that he would be able to rehabilitate certain categories of the signatures lines which had been stipulated invalid. However, prior to consideration of Petitioners' Motion in Limine, the Court found it necessary for Candidate to specify which categories or legal classifications and invalid signature lines Candidate believed were subject to rehabilitation, and what evidentiary means Candidate intended to offer in order to rehabilitate any stipulated invalid signature lines.

Accordingly, by order of September 15, 2006, the undersigned continued the evidentiary hearing to September 25, 2006, and ordered, *inter alia,* Candidate to file with the Court and serve upon counsel of record for Petitioners and the Secretary of the Commonwealth, Department of State, on or before 3:00 p.m., E.D.S.T., Tuesday, September 19, 2006, the following:

    a.  The intended rehabilitation setting forth the specific legal classifications or categories of the intended rehabilitation referring to and paralleling the codes that Petitioners outlined in the Petition to Set Aside;

    b.  The evidentiary methodology by which Candidate intends to utilize in order to rehabilitate specific stipulated invalid signatures lines; and

    c.  A brief in support of the legal classifications or categories of specific stipulated invalid signature lines. Said brief shall also address the issues raised in Petitioners' Motion in Limine.

At approximately 1:30 p.m. on September 19, 2006, Candidate, through counsel filed with this Court a document entitled "Memorandum in Support of Rehabilitation of Challenged Signatures". On September 21, 2006, Petitioners filed a timely response to Candidate's Memorandum. On September 25, 2006, Candidate, through counsel, filed with this Court "Candidate's First Filing of 5,300 Rehabilitated Registered Voters who Signed the Romanelli Nomination Papers but were Incorrectly Denominated as Invalid During the Court Ordered Review".

The evidentiary hearing reconvened on September 25, 2006. At that time, the parties stipulated that as of Friday, September 22, 2006 at 4:15 p.m., Petitioners had gone beyond by 8,931 signatures, the total number of signatures that Petitioners had to successfully challenge as invalid to set aside the Nomination Paper. Therefore, the only way that Candidate could successfully overcome the Petition to Set Aside was to rehabilitate, at a minimum, 8,931 stipulated invalid signatures. However, based on the stipulations introduced into evidence showing that Candidate did not have enough valid signatures to remain on the ballot and Candidate's inability to prove to the Court that he could successfully rehabilitate a sufficient number of stipulated invalid signatures, the Court informed the parties that the Petition to Set Aside would be granted. Accordingly, by order of September 26, 2006, the undersigned granted Petitioners' Petition to Set Aside and set aside the Nomination Paper of Carl J. Romanelli for Independent Political Body Candidate for United States Senator. *See In re Nomination Paper of Rogers,* 914 A.2d 457 (Pa.Cmwlth. 2006) (single judge opinion by Kelley, J.).[7]

In an opinion in support of the foregoing order, the undersigned found that Candidate had been disingenuous in his representations to this Court and that Candidate failed to comply with this Court's September 15, 2006 order. *Id.,* 914 A.2d at 463. The Court opined that:

7.  *Aff'd,* 589 Pa. 86, 907 A.2d 503 (2006).

Candidate has had more than adequate time to comply with the orders of this Court. Candidate's failure to comply alone is a sufficient reason to disallow rehabilitation, regardless of waiver. This Court believes that Candidate's cumulative disingenuous in these proceedings has crossed the line into bad faith on part of Candidate and his counsel. *Id.,* 914 A.2d at 468–69.

The undersigned further ordered that Candidate shall bear the costs incurred by all parties in this matter and directed Petitioners and all other parties of record to file a bill costs with the Chief Clerk on or before October 2, 2006.[8] In compliance with that order, Petitioners filed their bill of costs on October 2, 2006. Therein, Petitioners request the following costs, fees and expenses:

| | |
|---|---|
| Court ordered witness costs and fees: | $25,481.13 |
| Handwriting expert witness fees: | $ 1,500.00 |
| Petitioners' counsel fees: (29 days × 9 hours × $185.00) | $48,285.00 |
| Petitioners' counsel costs: | $ 9,260.06 |
| Stenographic and Transcription costs: | $ 3,726.28 |
| Copies and other expenses: | $ 1,415.15 |
| Total: | $89,668.16 |

Petitioners are requesting the foregoing costs, fees and expenses pursuant to Section 977 of the Pennsylvania Election Code[9] and Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503. With respect to the request for the foregoing costs, fees and expenses pursuant to Section 2503 of the Judicial Code, Petitioners allege that an award is appropriate based on this Court's finding in its September 26, 2006 opinion and order that "Candidate's cumulative disingenuousness in these proceedings has crossed the line into bad faith on

the part of Candidate and his counsel." In support of the bill of costs, Petitioners attached several exhibits and affidavits.

Pursuant to this Court's order of October 23, 2006, directing Candidate to file an answer to Petitioners' bill of costs, Candidate, through his counsel, filed an answer to Petitioners' bill of costs on November 15, 2006. Therein, Candidate does not challenge the categories or actual amounts that Petitioners are requesting in the bill of costs. Candidate alleges that Petitioners' bill of costs does not meet the standard set forth by our Supreme Court in its recent decision in *In re Nomination Paper of Nader,* 588 Pa. 450, 905 A.2d 450 (2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 995, 166 L.Ed.2d 712 (2007). Candidate further alleges that his conduct and that of his counsel did not amount to bad faith and requests that Petitioners' request for costs, fees and expenses be denied. On January 5, 2007, Candidate, through his counsel, filed a "Supplemental Memorandum of Law" and on January 9, 2007, Candidate filed an "Addendum to Supplemental Memorandum of Law." In each of these two documents, Candidate, *inter alia,* raises several constitutional issues with respect to ballot access in Pennsylvania by minor political parties and the imposition of costs upon a minor political party candidate. After being properly served, Petitioners filed a response to Candidate's "Supplemental Memorandum of Law" and "Addendum to Supplemental Memorandum of Law" on January 19, 2007.

On January 9, 2007, this Court held an evidentiary hearing with respect to Petitioners' bill of costs. In support of the

**8.** Our Supreme Court's order affirming this Court's September 26, 2006 order in this matter was entered without prejudice to Candidate to seek review of the pending order of this Court imposing a final order of costs. *In re Nomination Paper of Rogers,* 589 Pa. at 87, 907 A.2d at 503. Our Supreme Court further

directed that this Court's final order assessing costs reference by category and amount assessed as well as a statement of rationale behind the imposition of these costs. *Id.*

**9.** 25 P.S. § 2937.

request for the foregoing costs, Petitioners presented the testimony of: (1) Robert Snook, Security Officer for the Commonwealth Court of Pennsylvania; (2) Elizabeth Conroy, Correspondence Manager for United States Senator Robert Casey, Jr.;[10] and (3) Lani Benoist, reviewer for the Green Party. In opposition to the bill of costs, Candidate testified on his own behalf and presented the testimony of: (1) G. Ronald Darlington, Executive Administrator of the Commonwealth Court; (2) Jonathan M. Marks, an employee of the Department of State, Bureau of Elections; (3) Albert H. Masland, Chief Counsel for the Department of State; and (4) Tom Lingenfelter, self-employed dealer of historical documents/manuscripts.

Pursuant to our Supreme Court's directive as noted herein, the Court will review each category of costs as requested by Petitioners in their bill of costs and set forth the rationale for the disposition thereof. However, the Court believes that it is important to first address Candidate's assertion that pursuant to our recent Supreme Court's decision affirming the imposition of costs in the Nader matter, a prevailing party in an election matter is only entitled to the imposition of costs where the signature gathering campaign involves fraud and deception of mass proportions.

This Court in the Nader matter imposed costs upon Ralph Nader for court reporter appearances, transcription of proceedings, transcripts and handwriting expert witnesses. *See In re Nomination Paper of Nader*, 588 Pa. at 459, 905 A.2d at 455. This cost was upheld by the Supreme Court because, *inter alia*, our Supreme Court determined that this Court did not abuse its discretion in imposing such costs

given the magnitude of the fraud and deception implicated in Nader's signature gathering efforts. *Id.* at 466, 905 A.2d at 460. However, in determining that this Court did not abuse its discretion, our Supreme Court pointed out that "[t]he legislature has determined that the court, in its discretion when it deems it just, can impose costs." *Id.* The Supreme Court further stated that "[a]bsent a palpable abuse of discretion, 'it is not for the courts to undermine that determination by making a case by case assessment of' what the court found to be just with respect to the campaign that Appellants waged." *Id.* (quoting *In re Nominating Petition of Esther M. Lee,* 525 Pa. 155, 159, 578 A.2d 1277, 1279 (1990)) (footnote omitted).

Therefore, contrary to Candidate's assertion, our Supreme Court did not hold in the Nader matter that costs can only be imposed if the court finds fraud and deception in mass proportions. It is only where the court palpably abuses its discretion will the imposition of costs be overturned on appeal. With this in mind, this Court will now address each category of costs requested.

## CATEGORY I—COURT ORDERED WITNESS COSTS AND FEES

Petitioners request a total amount of $25,481.13 as costs for providing nine reviewers and one person to perform data entry for the parties pursuant to this Court's August 9, 2006 order. Petitioners state that the average cost per person per day was $87.86 ($25,481.13/29 days/10 persons).

Petitioners contend that they are entitled to the imposition of the aforesaid costs based on Candidate's failure to comply

---

**10.** During the review process, Ms. Conroy was employed as then Treasurer Casey's di-

rector of operations.

with Judge Colins' August 9, 2006 order to provide at least nine (9) individuals (hereinafter referred to as "reviewers") beginning August 14, 2006 to commence a review of the challenged signatures and to have nine reviewers for this purpose between the hours of 8:30 a.m. and 5:00 p.m. and continuing Monday through Friday until modified by order of this Court. In other words, the parties were required to each have nine reviewers at all times during the review process. Petitioners allege that Candidate's failure to comply with the August 9, 2006 order by not having at least nine reviewers on a daily basis impeded the review process by resulting in delays and the need to seek court intervention. Petitioners allege further that had Candidate acted in good faith, the review process should have taken no longer than ten days rather than the 29 days extended over a period of six weeks.

In response, Candidate maintains that there were only two days during the review process that he supplied minimal help. However, Candidate alleges that despite not having a full complement, the daily output of the reviewers still averaged 3,135 signatures per day. Therefore, Petitioners' costs should not be imposed upon Candidate.

Petitioners' three witnesses each testified as to the number of reviewers that were present for both parties throughout the review process.[11] With respect to Robert Snook's testimony, the undersigned finds Mr. Snook's testimony credible. Although Candidate attacked Mr. Snook's credibility based on his party affiliation and employment status,[12] as an officer of the Court, Mr. Snook's word is highly regarded just as an attorney's word is most highly regarded. Mr. Snook testified that he was sent to the reviewing room by the Court as a neutral party to observe the daily review and that he was present for all but four days of the review. Mr. Snook testified that Petitioners had nine reviewers and legal counsel present everyday to conduct the review. Mr. Snook testified further that Candidate did not have nine reviewers present every day and that normally six to seven reviewers were present and on some days, less than six were present.

Petitioners' second witness was Elizabeth Conroy. Candidate attacked Ms. Conroy's credibility based on her employment status as then Treasurer Robert Casey's director of operations; however, the

11. Both Petitioners' and Candidate's witnesses testified regarding certain altercations and disturbances which occurred during the review process. However, the Court finds that the occurrence of such altercations and disturbances is totally irrelevant to the matter at hand. While the Court does not condone such conduct, whether verbal or physical, by any individual who may have been involved, the Court certainly understands that misunderstandings may occur in a contested election matter, particularly where the parties are under time constraints and confined to one room for several hours a day over a long period of time.

12. Candidate initially objected to the undersigned or any Judge of the Commonwealth Court hearing Mr. Snook's testimony because Mr. Snook is an employee of the Court. Candidate suggested that only a judge of another court could be impartial given Mr. Snook's employment status. The undersigned overruled Candidate's objection based on the Rule of Necessity. See *Stroudsburg Area School District v. Kelly*, 701 A.2d 1000 (Pa.Cmwlth. 1997), *petition for allowance of appeal denied*, 553 Pa. 710, 719 A.2d 748 (1998) (The Rule of Necessity is a common law principle that requires a judge with a personal interest in a case to proceed if the case cannot be heard otherwise. If all of the members of a tribunal are subject to recusal, the tribunal must consider the case despite the personal interest or bias of the members; otherwise, the public and the litigants would be denied a decision in the matter.).

Court finds Ms. Conroy's testimony credible based on her demeanor and manner. Ms. Conroy testified that she maintained the daily log of the signatures reviewed. She testified that she was present every day during the review process except the first day. Ms. Conroy testified that Petitioners always had nine reviewers present but that Candidate only had nine reviewers present for two days of the signature review. Ms. Conroy testified further that the average number of reviewers supplied by Candidate on a daily basis was six.

Petitioners' final witness was Lani Benoist. Ms. Benoist testified that she was employed by Manpower Temporary Employment Services and became involved in the review process as a reviewer for the Green Party when she was assigned to the job as a temporary employee. Ms. Benoist testified that she began her employment on August 31, 2006 and performed as a reviewer for four weeks.

The Court finds Ms. Benoist's testimony highly credible as she was employed to review signatures by an independent temporary employment agency and she was not previously affiliated with either Petitioners or Candidate. Ms. Benoist testified that Petitioners always had nine reviewers present, that the Green Party occasionally had nine reviewers, and that the number of reviewers for the Green Party each day was between four and nine.

Candidate did not offer any rebuttal evidence to contradict Petitioners' evidence that Candidate did not provide the full complement of nine reviewers on a daily basis as ordered by this Court. Rather counsel for Candidate, informed the Court on more than one occasion that Candidate had nine reviewers "or close to nine reviewers" present every day except for two days.[13] In his answer to the bill of costs, Candidate again acknowledged that he did not have a full complement of reviewers but justified the shortfall by pointing out the daily output of signatures reviewed averaged 3,135. However, the fact that the review still produced results everyday does not excuse Candidate's failure to comply with this Court's directive that he provide nine reviewers on a daily basis. It is clear that Candidate had the means to secure nine individuals as evidenced by the fact that he engaged the services of a temporary employment agency to provide individuals to conduct the review.

---

**13.** *See* Transcript of hearing held on August 30, 2006 at pp. 26; 38, wherein, counsel for Candidate stated as follows:

> Mr. Otter: That makes it awfully difficult for the Candidate to defend that kind of challenge. It just adds to the burden. And in this case, they've challenged 70,000 signatures, which, in and of itself, is a substantial burden for the Candidate, **which we are meeting because we have for most days nine people.** And the Democrats have had nine people, and we're making remarkable progress in the last few days. I believe we're now averaging over 3,000 signatures a day, **which is pretty good for nine people from each party.**
>
> . . . .
>
> As is the Green Party and Mr. Romanelli. We made a very good faith effort, and we've had—**except for one day during the first week, we've had the nine people.** We're making incredible progress.

*See also* Transcript of hearing held September 25, 2006 at p. 15, wherein, counsel for Candidate stated as follows:

> Mr. Otter: Your Honor, I was there every day but the one I had to attend a funeral. And to the best of my recollection, we had approximately nine members each day. The third day, I recall we had only four. And I believe the last day, on Friday, we had—I don't know—three or four. I don't recall. So we were a little light a couple days. But most of the time for the 30 days we were there, I would say the bulk of the time we had nine or close to nine volunteers.

In light of the credible testimony of Mr. Snook, Ms. Conroy and particularly Ms. Benoist, and the lack of rebuttal evidence, the Court finds that Candidate did not have nine reviewers present everyday or "close to nine" reviewers the bulk of the time. Based on the credible testimony of Mr. Snook, Ms. Conroy and Ms. Benoist, the Court finds that Candidate only had an average of six reviewers each day of the review or two-thirds of the Court's requirement that each party have nine reviewers present.

The Court finds further that only having an average of six reviewers per day is not, in this Court's opinion, substantial compliance with this Court's directive as advanced by Candidate. Time is of the essence in election matters as challenges must be resolved within a limited time period given the election year calendar. Judge Colins clearly recognized in the August 9, 2006 order that all parties and entities involved had to cooperate in order to achieve a timely resolution of the matter and that the Court expected that the measures set forth in that order to accomplish this feat, specifically having at least nine individuals present during the entire signature review, would be conscientiously adhered to. Moreover, the Court specifically expected the parties to work diligently and expeditiously to narrow the large number of challenges.[14] Having less than nine reviewers clearly violated the Court's mandate resulting in a waste of precious time. If Candidate believed that he was unable to comply with the order directing him to have at least nine individuals present during the review process, he could

have come back into Court and asked for the appropriate relief.

Pursuant to Section 977 of the Election Code, 25 P.S. § 2937, in the case where a nomination petition or paper is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just. As stated previously herein, this Court ordered the parties to provide nine reviewers on a daily basis until further order of this Court. Pursuant to this Court's August 9, 2006 order, the parties were also required to tabulate the numbers of challenged signatures found to be valid and those found to be invalid. Thus, by clear implication, the parties were required to provide an individual to tabulate the results of the review. As indicated by the record, Ms. Conroy performed this function for both parties.[15] Therefore, the expense of providing these ten individuals is a cost of the proceedings.

It is clear that Candidate's failure to comply with this Court's August 9, 2006 order resulted in the review process taking longer than was anticipated or necessary had Candidate complied and provided a full complement of nine reviewers on a daily basis. Accordingly, the Court finds that Petitioners are entitled, pursuant to Section 977 of the Election Code, to $25,481.13 as costs associated with providing nine reviewers and one person to perform data entry for both parties.

## CATEGORY II–HANDWRITING EXPERT WITNESS FEES

■ Petitioners request $1,500.00 for handwriting expert witness fees. While Pe-

14. As has been recognized by our Supreme Court, "[t]he overriding consideration embodied in Section 977 of the Election Code is the expeditious resolution of objections to a prospective candidate's filings." *In re Johnson,* 509 Pa. 347, 351, 502 A.2d 142, 145 (1985).

15. The Court notes that the record testimony reveals that counsel for Candidate directed the reviewers for the Green Party who needed training on the SURE system to Ms. Conroy in order to obtain such training.

titioners state that the services of their handwriting expert was not extensively required because, as a result of the significant number of line challenges that were sustained, it was not necessary for Petitioners to present their global challenges, the Court finds that Petitioners are entitled to the costs associated with securing a handwriting expert. Petitioners were under an obligation to be prepared to present their global challenges if the need arose; therefore, it was well within reason to secure the services of a handwriting expert and the amount requested is also within reason.

Moreover, this Court in the Nader matter imposed costs upon Ralph Nader not only for court reporter appearances, transcription of proceedings, and transcripts but also for handwriting expert witnesses in the amount of $38,267.00. *See In re Nomination Paper of Nader*, 588 Pa. at 459, 905 A.2d at 455. This cost was upheld by the Supreme Court. *Id.* at 466, 905 A.2d at 460.

Herein, Petitioners, as the prevailing party, are entitled to an award of reasonable costs, including witness fees, under Section 977 of the Election Code. As stated previously herein, Candidate has not challenged the specific amounts requested by Petitioners in their bill of costs. Accordingly, Petitioners' request for costs in the amount of $1,500.00 for handwriting expert witness fees is granted pursuant to Section 977 of the Election Code.

**CATEGORY III—STENOGRAPHIC AND TRANSCRIPTION COSTS**

■ Petitioners request $3,726.28 in stenographic and transcription costs. As stated previously herein, Candidate has not challenged the specific amounts requested by Petitioners in their bill of costs. Moreover, Candidate acknowledges that stenographic and transcription costs are

permitted pursuant to the Election Code and our Supreme Court's recent decision regarding costs in *In re Nomination Paper of Nader*. Given the stenographic and transcription services required in this matter, the Court finds that $3,726.28 is a reasonable amount for such services.

Accordingly, as the prevailing party, Petitioners' request for costs in the amount of $3,726.28 for stenographic and transcription services is granted pursuant to Section 977 of the Election Code.

**CATEGORY IV—COPIES AND OTHER EXPENSES**

■ Petitioners request $1,415.15 for copies and other expenses. Again, Candidate has not challenged the specific amounts requested by Petitioners in their bill of costs and Candidate does not specifically challenge Petitioners' request for costs for copies and other expenses. As the prevailing party, the Court finds that Petitioners are entitled to costs for copies and other expenses and that the amount requested is reasonable given the size and volume of the exhibits that were introduced by Petitioners at the evidentiary hearings in this matter.

Accordingly, Petitioners' request for costs in the amount of $1,415.15 for copies and other expenses is granted pursuant to Section 977 of the Election Code.

**CATEGORY V—PETITIONERS' COUNSEL FEES**

■ Petitioners request counsel fees in the amount of $48,285.00 (29 days × 9 hours × $185.00) pursuant to Section 977 of the Election Code and Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503. Recently, this Court held that Section 977 of the Election Code does not authorize the imposition of attorney's fees. *City of Wilkes–Barre v. Urban*, 915 A.2d 1230 (Pa. Cmwlth.2007). Accordingly, Petitioners

are not entitled to an award of attorney's fees pursuant to Section 977 of the Election Code.

■ Pursuant to Section 2503(7) of the Judicial Code, a party may be awarded counsel fees as a sanction against another party for dilatory, obdurate or vexatious conduct during the pendency of a matter. 42 Pa.C.S. § 2503(7). Herein, Petitioners allege that Candidate's disingenuous and dilatory conduct in this proceeding is detailed in this Court's September 26, 2006 decision. Petitioners point out that this Court noted the lack of candor that Candidate displayed toward the tribunal and found that Candidate's and his counsel's cumulative disingenuousness in these proceedings had crossed the line into bad faith. Petitioners contend that such conduct has not only resulted in unwarranted Court involvement and time but also directly contributed to the costs incurred by those who successfully challenged the Nomination Paper. Petitioners also contend that the review process was ultimately and unnecessarily extended over six weeks by Candidate's failure to maintain nine reviewers and Candidate's efforts to willfully impede the review process. Petitioners argue that had Candidate and his counsel acted in good faith, the review process should have taken no longer than ten days.

In response, Candidate asserts that he did not act in bad faith. Candidate asserts further that the signature review could not have been concluded in ten days as alleged by Petitioners due to the problems with the SURE system, the lack of uniformity in voting records in the SURE system on a county to county basis, the hostile atmosphere in the reviewing room, and the violence that erupted on the fifth day of reviewing.

This Court finds, based on Candidate's conduct, that Petitioners are entitled to attorney's fees in the requested amount. As found by this Court in the September 26, 2006 opinion in support of the order granting the Petition to Set Aside and dismissing Candidate's Nomination Paper, Candidate has not been a role model in response to the Petition to Set Aside. Not only did Candidate and his counsel fail to comply with this Court's August 9, 2006, as discussed in detail previously herein, Candidate and his counsel failed to comply with this Court's order of September 15, 2006 with regard to his intended rehabilitation of specific stipulated invalid signature lines.[16] As stated by this Court:

> Candidate was not cooperative, often times disingenuous to the process. There is a duty and obligation upon the parties, counsel and this Court to advance the proceedings because of the Court's mandate under the Election Code to resolve these matters expeditiously. It must be recognized in the election process that there is the right of a candidate to participate and the right to challenge the validity of a candidacy. The parties must proceed with the greatest candor to ensure that the process moves quickly and efficiently. A candidate who is cooperative does not delay in such important matters.

Candidate has had more than adequate time to comply with the orders of this Court. Candidate's failure to comply alone is a sufficient reason to disallow rehabilitation, regardless of waiver. This Court believes that Candidate's cumulative disingenuousness in these proceedings has crossed the line into bad

---

16. Candidate's and his counsel's failure to comply with the September 15, 2006, is detailed in this Court's September 26, 2006 opinion in support of its order granting the Petition to Set Aside and setting aside Candidate's Nomination Paper.

faith on the part of Candidate and his counsel.

*In re Nomination Paper of Rogers,* 914 A.2d at 468–69.

Candidate offered no explanation to this Court as to why he failed to comply with this Court's August 9, 2006 order other than because the Green Party is a small party, they really did not have the resources to keep people away from their jobs. *See* Transcript of January 9, 2007 hearing at pp. 147–48. Counsel offered to the Court that this was a substantial case, that the Green Party did not have the resources that were available to Petitioners and that they did the best they could with what they had. *Id.* at p. 214. However, as pointed out previously herein, Candidate did hire temporary employees from an independent employment agency; therefore, the Court rejects Candidate's assertion that he and the Green Party did not have the resources to obtain the required nine reviewers. Nonetheless, if Candidate truly believed he did not have the resources and was having difficulty securing nine individuals on a daily basis, it was the duty of Candidate and his counsel to inform the Court of the situation and request the appropriate relief.

With respect to the failure of Candidate and his counsel to comply with this Court's September 15, 2006, counsel offered to the Court the explanation that he did not have time. *Id.* at p. 217. However, the Court was more than lenient in giving Candidate and his counsel the opportunity to submit to the Court the specifics of what stipulated invalid signatures Candidate believed could be rehabilitated. Moreover, Candidate was aware that Petitioners were seeking the specifics of the intended rehabilitation when Petitioners filed their Motion in Limine on September 7, 2006. If Candidate and counsel believed from the very beginning of the review process, as they

asserted to this Court, that Candidate would be given the opportunity to rehabilitate the signatures that were stipulated invalid during the entire review process, Candidate should have been prepared at the September 14, 2006 evidentiary hearing to proceed with the intended rehabilitation. The point is that counsel had a duty to be candid with the Court rather than submitting a document that was grossly inadequate and only resulted in the proceedings being drawn out for one more week.

The Court sympathizes with the plight of a minor political party candidate who wishes to gain access to the ballot but the percentage of the signatures required in order for such a candidate to be placed on the ballot has been upheld by our Supreme Court. As stated by our Supreme Court, "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *In re Nomination Paper of Nader,* 588 Pa. at 465, 905 A.2d at 460 (quoting *Burdick v. Takushi,* 504 U.S. 428, 440 n. 10, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)).

The Court finds that Candidate's conduct and that of his counsel throughout these entire proceedings falls squarely within the type of conduct set forth in Section 2507(3) of the Judicial Code for which a party may be awarded attorney's fees. Accordingly, this Court finds that Petitioners are entitled to an award of attorney's fees pursuant to Section 2503(7) of the Judicial Code and that the hourly rate of $185.00 is reasonable. Therefore, Petitioners are awarded the requested amount of $48,285.00

## CATEGORY VI—PETITIONERS' COUNSEL COSTS

■ Finally, Petitioners request counsel costs in the amount of $9,260.60. These

costs include the cost of Petitioners' attorney, who was present on a daily basis for the line challenge review, for tolls, mileage and travel time. The Court finds that these costs are embraced in the requested attorney's fees. Accordingly, Petitioners' request for counsel costs is denied.

## CONCLUSION

Based on the foregoing, the Court finds that Petitioners in this matter are entitled to the following costs, fees and expenses:

| | |
|---|---|
| Court ordered witness costs and fees: | $25,481.13 |
| Handwriting expert witness fees: | $ 1,500.00 |
| Petitioners' counsel fees: | $48,285.00 |
| (29 days × 9 hours × $185.00) | |
| Stenographic and Transcription costs: | $ 3,726.28 |
| Copies and other expenses: | $ 1,415.15 |
| | |
| Total: | $80,407.56 |

Accordingly, Petitioners are awarded a total of $80,407.56 to be paid by the Candidate and his counsel.[17] An appropriate order will be entered."

As stated previously herein, the order which originally accompanied the foregoing January 24, 2007 opinion has been amended in accord with our Supreme Court's orders of October 4, 2006 and November 20, 2007. The amended order accompanies this opinion.

## *O R D E R*

AND NOW, this 24th day of January, 2008, in accordance with the Pennsylvania Supreme Court's November 20, 2007 order at 12 MAP 2007 affirming in part, reversing and remanding in part this Court's January 24, 2007 order in the above captioned matter, the January 24, 2007 order is amended to comply with the Supreme Court's October 4, 2006 order at 108 MAP 2006 to provide:

Based on the evidence presented at the January 9, 2007 evidentiary hearing on Petitioners' Bill of Costs and Related Fees and Expenses and in accordance with the opinion accompanying this Court's January 24, 2007 order, said Bill of Costs is approved in part and disapproved in part and the following costs, by categories, are assessed.

## CATEGORY I—COURT ORDERED WITNESS COSTS AND FEES:

Petitioners are entitled to $25,481.13 for Court ordered witness costs and fees on the following basis. Pursuant to Section 977 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2937, in the case where a nomination petition or paper is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just. In the above captioned matter, this Court ordered the parties to provide nine reviewers on a daily basis until further order of this Court. Pursuant to this Court's August 9, 2006 order, the parties were also required to tabulate the numbers of challenged signatures found to be valid and those found to be invalid. Thus, by clear implication, the parties were required to provide individuals to tabulate the results of the review. As indicated by the record, Ms. Elizabeth Conroy performed this function for both parties. Therefore, the expense of providing these ten individuals is a cost of the proceedings.

It is clear that Candidate's failure to comply with this Court's August 9, 2006 order resulted in the review process taking longer than was anticipated or necessary

---

**17.** The constitutional issues raised by Candidate in opposition to the award of costs are without merit. As stated by our Supreme Court in *In re Nomination Paper of Nader,* "[a]ppellants' constitutional challenge cannot succeed because the cost provision in Section [977] does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny." *In re Nomination Paper of Nader,* 588 Pa. at 465, 905 A.2d at 459.

had Candidate complied and provided a full complement of nine reviewers on a daily basis. Accordingly, the Court finds that Petitioners are entitled, pursuant to Section 977 of the Election Code, to $25,481.13 as costs associated with providing nine reviewers and one person to perform data entry for both parties.

**CATEGORY II—HANDWRITING EXPERT WITNESS FEES:**

Petitioners are entitled to $1,500.00 for costs associated with securing handwriting expert witness. Herein, Petitioners, as the prevailing party, are entitled to an award of reasonable costs, including witness fees, under Section 977 of the Election Code. Petitioners were under an obligation to be prepared to present their global challenges if the need arose; therefore, it was well within reason to secure the services of a handwriting expert and the amount requested is also within reason. Moreover, this Court in the Nader matter imposed costs upon Ralph Nader not only for court reporter appearances, transcription of proceedings, and transcripts but also for handwriting expert witnesses in the amount of $38,267.00. *See In re Nomination Paper of Nader*, 588 Pa. 450, 459, 905 A.2d 450, 455 (2006). This cost was upheld by the Supreme Court. *Id.* at 466, 905 A.2d at 460. Accordingly, Petitioners' request for costs in the amount of $1,500.00 for handwriting expert witness fees is granted pursuant to Section 977 of the Election Code.

**CATEGORY III—STENOGRAPHIC AND TRANSCRIPTION COSTS:**

Petitioners are entitled to $3,726.28 in stenographic and transcription costs. Candidate acknowledges that stenographic and transcription costs are permitted pursuant to the Election Code and our Supreme Court's recent decision regarding costs in *In re Nomination Paper of Nad-*er. Given the stenographic and transcription services required in this matter, the Court finds that $3,726.28 is a reasonable amount for such services. Accordingly, as the prevailing party, Petitioners' request for costs in the amount of $3,726.28 for stenographic and transcription services is granted pursuant to Section 977 of the Election Code.

**CATEGORY IV—COPIES AND OTHER EXPENSES:**

Petitioners are entitled to $1,415.15 for copies and other expenses. Candidate has not challenged the specific amounts requested by Petitioners in their bill of costs and Candidate does not specifically challenge Petitioners' request for costs for copies and other expenses. The Court finds that Petitioners, as the prevailing party, are entitled to costs for copies and other expenses and that the amount requested is reasonable given the size and volume of the exhibits that were introduced by Petitioners at the evidentiary hearings in this matter. Accordingly, Petitioners' request for costs in the amount of $1,415.15 for copies and other expenses is granted pursuant to Section 977 of the Election Code.

**CATEGORY V—PETITIONERS' COUNSEL FEES:**

Section 977 of the Election Code does not authorize the imposition of attorney's fees. *City of Wilkes–Barre v. Urban*, 915 A.2d 1230 (Pa.Cmwlth.2007). Accordingly, Petitioners are not entitled to an award of attorney's fees pursuant to Section 977 of the Election Code. However, Petitioners are entitled to $48,285.00 (29 days × 9 hours × $185.00) as costs for counsel fees pursuant to Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503. Pursuant to Section 2503(7) of the Judicial Code, a party may be awarded counsel fees as a sanction against another party for dilatory, obdu-

rate or vexatious conduct during the pendency of a matter. 42 Pa.C.S. § 2503(7).

As found by this Court in the September 26, 2006 opinion in support of the order granting the Petition to Set Aside and dismissing Candidate's Nomination Paper, Candidate has not been a role model in response to the Petition to Set Aside. Not only did Candidate and his counsel fail to comply with this Court's order of August 9, 2006, Candidate and his counsel failed to comply with this Court's order of September 15, 2006 with regard to his intended rehabilitation of specific stipulated invalid signature lines.[18] As stated by this Court:

> Candidate was not cooperative, often times disingenuous to the process. There is a duty and obligation upon the parties, counsel and this Court to advance the proceedings because of the Court's mandate under the Election Code to resolve these matters expeditiously. It must be recognized in the election process that there is the right of a candidate to participate and the right to challenge the validity of a candidacy. The parties must proceed with the greatest candor to ensure that the process moves quickly and efficiently. A candidate who is cooperative does not delay in such important matters.

Candidate has had more than adequate time to comply with the orders of this Court. Candidate's failure to comply alone is a sufficient reason to disallow rehabilitation, regardless of waiver. This Court believes that Candidate's cumulative disingenuousness in these proceedings has crossed the line into bad faith on the part of Candidate and his counsel.

*In re Nomination Paper of Rogers,* 914 A.2d 457, 468–69 (Pa.Cmwlth.), *aff'd,* 589 Pa. 86, 907 A.2d 503 (2006).

Candidate offered no explanation to this Court as to why he failed to comply with this Court's August 9, 2006 order other than because the Green Party is a small party, they really did not have the resources to keep people away from their jobs. *See* Transcript of January 9, 2007 hearing at pp. 147–48. Counsel offered to the Court that this was a substantial case, that the Green Party did not have the resources that were available to Petitioners and that they did the best they could with what they had. *Id.* at p. 214. However, Candidate did hire temporary employees from an independent employment agency; therefore, the Court rejects Candidate's assertion that he and the Green Party did not have the resources to obtain the required nine reviewers. Nonetheless, if Candidate truly believed he did not have the resources and was having difficulty securing nine individuals on a daily basis, it was the duty of Candidate and his counsel to inform the Court of the situation and request the appropriate relief.

With respect to the failure of Candidate and his counsel to comply with this Court's September 15, 2006, counsel offered to the Court the explanation that he did not have time. *Id.* at p. 217. However, the Court was more than lenient in giving Candidate and his counsel the opportunity to submit to the Court the specifics of what stipulated invalid signatures Candidate believed could be rehabilitated. Moreover, Candidate was aware that Petitioners were seeking the specifics of the intended rehabilitation when Petitioners filed their Motion in Limine on September 7, 2006. If Candi-

---

**18.** Candidate's and his counsel's failure to comply with the September 15, 2006 order is detailed in this Court's September 26, 2006 opinion in support of its order granting the Petition to Set Aside and setting aside Candidate's Nomination Paper. *See In re Nomination Paper of Rogers,* 914 A.2d 457 (Pa. Cmwlth.), *aff'd,* 589 Pa. 86, 907 A.2d 503 (2006).

date and counsel believed from the very beginning of the review process, as they asserted to this Court, that Candidate would be given the opportunity to rehabilitate the signatures that were stipulated invalid during the entire review process, Candidate should have been prepared at the September 14, 2006 evidentiary hearing to proceed with the intended rehabilitation. The point is that counsel had a duty to be candid with the Court rather than submitting a document that was grossly inadequate and only resulted in the proceedings being drawn out for one more week.

The Court finds that Candidate's conduct and that of his counsel throughout these entire proceedings falls squarely within the type of conduct set forth in Section 2503(7) of the Judicial Code for which a party may be awarded counsel fees. Accordingly, this Court finds that Petitioners are entitled to an award of counsel fees pursuant to Section 2503(7) of the Judicial Code and that the hourly rate of $185.00 is reasonable. Therefore, Petitioners are awarded the requested amount of $48,285.00.

Accordingly, Carl J. Romanelli and Lawrence M. Otter, Esquire, are hereby ordered to pay, within sixty (60) days of the date of this amended order, the following costs, fees and expenses:

| | |
|---|---|
| Court ordered witness costs and fees: | $25,481.13 |
| Handwriting expert witness fees: | $ 1,500.00 |
| Petitioners' counsel fees: | $48,285.00 |
| (29 days × 9 hours × $185.00) | |
| Stenographic and Transcription costs: | $ 3,726.28 |
| Copies and other expenses: | $ 1,415.15 |
| | |
| Total: | $80,407.56 |

It is further ordered that Petitioners shall pay for the costs of the transcript of the January 9, 2007 evidentiary hearing in this matter.