

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2005

# Turnage v. US Parole Comm

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3712

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Turnage v. US Parole Comm" (2005). *2005 Decisions.* Paper 163.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/163

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

APS-52                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-3712

———————————

TONY TURNAGE,

Appellant

v.

UNITED STATES PAROLE COMMISSION;
UNITED STATES ATTORNEY GENERAL;
UNITED STATES BUREAU OF PRISONS;
UNITED STATES MARSHAL SERVICE

———————————

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(Civ. No. 05-cv-2659)
District Judge: Honorable Charles R. Weiner

_____

Submitted For Possible Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
November 17, 2005

Before:  SLOVITER, McKEE and FISHER, Circuit Judges

(Filed: December 5, 2005)

_____

OPINION

_____

PER CURIAM

Tony Turnage appeals pro se from an order of the District Court for the Eastern District of Pennsylvania dismissing his habeas corpus petition without prejudice because his claims were not ripe for consideration. In 1987, Turnage was convicted in the District Court for the District of Maryland of robbery and larceny of a savings and loan and was sentenced to 15 years' imprisonment. From 1993 until 2004, Turnage was paroled and reimprisoned twice, and was, at one point, held in custody in Maryland while state charges were pending against him. In the course of parole revocation proceedings, in May 2005, Turnage was transferred to the Federal Detention Center in Philadelphia and appeared briefly before a parole revocation hearing examiner. This hearing was continued, however.

Turnage subsequently filed a document titled "Motion Pursuant to Nunc Pro Tunc," which the District Court construed as a habeas petition pursuant to 28 U.S.C. § 2241. In this petition, Turnage raises several claims related to his impending parole revocation proceedings. Turnage's primary claim appears to be that a report generated by the United States Parole Commission, containing calculations of both his sentence credit and the number of days remaining on his sentence, is flawed in numerous ways. Turnage argues that if this report is relied on during his parole revocation hearing, he will be deprived of a fair hearing and his sentence will be erroneously increased by over two years. Turnage also asserts that the U.S. Marshals violated their own procedures when they took him into custody in December 2004.

2

The District Court granted Turnage's motion to proceed in forma pauperis and ordered Respondents to file a response within 30 days of service. Nine days later, however, the District Court vacated that order and dismissed Turnage's petition without prejudice, holding that the petition was not yet ripe for adjudication. See Turnage v. United States Parole Comm'n, et al., No. 05-cv-2659 (order entered July 20, 2005). Turnage timely filed this appeal.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.[1] As a preliminary matter, to the extent that Turnage's allegations that he was beaten when taken into custody by the U.S. Marshals indicate an intent to raise an excessive force claim, such a claim would be properly brought in a separate complaint filed under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), rather than in a habeas corpus petition. As to the remaining claims at issue on appeal, after a careful review of the record, we conclude that they present "no substantial question" under Third Cir. LAR 27.4 and I.O.P. 10.6. We will, therefore, summarily affirm the District Court's judgment.

The question of ripeness implicates the competing concerns of whether the issues raised are fit for judicial review and what hardship will be experienced by the parties if

_____

[1]Although the District Court's dismissal was without prejudice, it was based on ripeness grounds. As Turnage cannot cure this defect, we have jurisdiction over the District Court's order. See Presbytery of New Jersey v. Florio, 40 F.3d 1454, 1461 n.6 (3d Cir. 1994).

judicial review is withheld.  Felmeister v. Office of Att'y Ethics, 856 F.2d 529, 535 (3d Cir. 1988) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).  Fitness for judicial review depends on several factors, including whether the agency action is final, whether the issues involve a question of law requiring no further factual development, and whether further administrative action is needed to clarify the agency's position.  Felmeister, 856 F.2d at 535-37.  When Turnage filed his habeas petition, the hearing on which his claims are based had not yet occurred and the agency action was not final.  Therefore, the "fitness for review" prong of the ripeness inquiry was not satisfied.

The second prong of the ripeness inquiry is whether deferral of judicial review will create an immediate and significant hardship for the parties and, if so, whether this hardship outweighs the unfitness for review.  See Felmeister, 856 F.2d at 537-38.  If Turnage's allegations are true, and the erroneous report is eventually used to determine the date of his ultimate release, then Turnage risks being incarcerated for longer than his sentence mandates.  This could, indeed, constitute a "significant hardship" as well as a violation of Turnage's constitutional rights.  However, we must stress that when Turnage filed his habeas petition, the parole revocation hearing had not been held and this "hardship" was merely hypothetical rather than "immediate and significant."  The District Court correctly dismissed Turnage's petition as unripe, as his claims were based on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  See Binker v. Com. of Pa., 977 F.2d 738, 753 (3d Cir. 1992) (internal citation

4

omitted). In his summary action response, Turnage contends that the "issues and errors had already been committed and were in place," making his claims ripe when he filed his petition. We disagree. While Turnage's factual allegations (and the Parole Commission's report itself) may have existed when he filed his petition, the report had not yet been relied upon to Turnage's detriment and, therefore, as discussed above, Turnage had no habeas claim.[2]

Turnage also takes issue with the language of the District Court's order describing his habeas claims as involving a parole request. We agree with Turnage that this is an improper characterization of Turnage's claims, which focus on a pending parole revocation hearing. We find this slip of the pen to be of no moment, however, as it does not alter the fact that Turnage's claims were not ripe.

For the foregoing reasons we will summarily affirm the District Court's judgment. See Third Circuit LAR 27.4 and I.O.P. 10.6.

---

[2]Turnage indicates in his summary action response that his parole revocation hearing has taken place and that the Parole Commission has issued a decision. If this is the case, any claims arising from that proceeding would now be ripe. After Turnage fully exhausts available administrative remedies, he may file a new habeas petition raising these claims.