The CONSTITUTION PARTY
OF, PENNSYLVANIA, et
al., Plaintiffs

v.

Pedro A. CORTES, et al., Defendants.

Civil Case No. 5:09–cv–01691.

United States District Court,
E.D. Pennsylvania.

March 31, 2010.

Opinion Denying Reconsideration
July 16, 2010.

---

Oliver B. Hall, Washington, DC, for Plaintiffs.

Howard G. Hopkirk, Office of Attorney General, Harrisburg, PA, A. Taylor Williams, Michael Daley, Administrative Office of PA Courts, Philadelphia, PA, for Defendants.

### *MEMORANDUM*

STENGEL, District Judge.

This involves six plaintiffs in search of a case. The Constitution Party of Pennsylvania, The Green Party of Pennsylvania, and the Libertarian Party of Pennsylvania, and the chairs of the three parties, challenge the constitutionality of certain sections of the Pennsylvania Election Code. They believe the sections place unreasonable burdens on non-major party candidates.[1] The defendants[2] filed motions to

---

1. Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief, *Constitution Party of Pennsylvania v. Cortes*, No. 09–1691 (E.D. Pa. filed June 19, 2009) [hereinafter Amended Complaint].

2. The Justices of the Supreme Court of Pennsylvania, the Judges of the Commonwealth Court of Pennsylvania, Charlese W. Johns, Prothonotary of the Supreme Court of Pennsylvania, and Michael F. Krimmel, Chief Clerk of the Commonwealth Court of Pennsylvania will be referred to collectively as "Judicial Defendants." Pedro Cortes, Chet Harhut, and Thomas Corbett will be referred to collectively as "Executive Defendants."

dismiss the amended complaint.[3]

Because the plaintiffs present no case or controversy as required by Article III of the Constitution, I will dismiss their amended complaint.

## I. *Background*

Plaintiffs allege the Pennsylvania Election Code imposes unavoidable and severe burdens on candidates for public office unless they are members of the Republican or Democratic party. According to the plaintiffs, this "freezes" the political status quo.

The Election Code allows major party candidates to access the general election ballot through publicly funded primary elections. 25 P.S. § 2862.[4] Non-major party candidates,[5] however, must submit nomination papers. 25 P.S. § 2872.2.[6] Private parties are allowed to challenge the validity of these nomination papers. 25 P.S. § 2937.[7] A court is authorized to tax

---

**3.** *See* Motion to Dismiss Plaintiffs' Amended Complaint Filed on Behalf of the Justices of the Supreme Court of Pennsylvania, the Judges of the Commonwealth Court of Pennsylvania, Charles W. Johns, Prothonotary of the Supreme Court of Pennsylvania, and Michael F. Krimmel, Chief Clerk of the Commonwealth Court of Pennsylvania, *Constitution Party of Pennsylvania v. Cortes*, No. 09–1691 (E.D. Pa. filed July 2, 2009); Defendants Pedro A. Cortes, Chet Harhut, and Thomas Corbett's Motion to Dismiss the Amended Complaint, *Constitution Party of Pennsylvania v. Cortes*, No. 09–1691 (E.D. Pa. filed Aug. 24, 2009).

**4.** 28 P.S. § 2862 provides: "All candidates of political parties, as defined in section 801 of this act ... shall be nominated, and party delegates and alternate delegates, committeemen and officers who, under the provisions of Article VIII of this act or under the party rules, are required to be elected by the party electors, shall be elected at primaries held in accordance with the provisions of this act, except as otherwise provided in this act."

**5.** Pursuant to 25 P.S. § 2831(a), a political party is "[a]ny party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State ...."

"Any political body which is not a political party, as hereinabove defined, but which has nominated candidates for such general or municipal election by nomination papers in the manner provided by this act, shall be deemed to be a political body within the meaning of this act." 25 Pa.S.A. § 2831(c).

In addition, a minor party is defined as a political party "whose State-wide registration is less than fifteen per centum of the combined State-wide registration for all State-wide political parties as of the close of registration period immediately preceding the most recent November election." 25 Pa. Stat. § 2872.2.

This opinion will refer to minor party candidates, political body candidates, and independent candidates collectively as "non-major party candidates."

**6.** 25 P.S. § 2872.2(a) provides: "(a) Notwithstanding any other provision in this act to the contrary, minor political parties shall nominate all of their candidates for the offices to be filled at the ensuing November election pursuant to section 903 in accordance with the requirements of section 951, other than subsection (e)(6) and (7) thereof, and section 954, and shall obtain the required signatures during the same time frame available to political bodies. Minor political parties shall be subject to the provisions of this act applicable to political parties with respect to special elections, voter registration forms, substituted nominations and all other purposes except as otherwise expressly provided in this section ...."

**7.** 25 P.S. § 2937 provides: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said peti-

litigation costs and attorney fees "it shall deem just" against the candidate defending the challenged nomination paper.[8] *See* 25 P.S. § 2937; *In re: Nomination Paper of Ralph Nader*, 588 Pa. 450, 905 A.2d 450, 458 (2006) (the Supreme Court of Pennsylvania found a court could impose costs and attorney fees against a candidate).

At the crux of the plaintiffs' concern is a 2004 Pennsylvania Commonwealth Court case in which litigation costs of more than $80,000 were taxed against two independent candidates, Ralph Nader for President and Peter Miguel for Vice President of the United States. *See Nader*, 905 A.2d at 455, 459. Apparently, this was the first time the court authorized the taxation of costs against the defending candidates, rather than against individuals challenging the nomination papers. Then, in 2006, the Commonwealth Court taxed more than $80,000 in litigation costs and attorneys fees against a non-major party candidate for United States Senate, Carl Romanelli. *In re Nomination Paper of Rogers*, 942

A.2d 915, 933 (Pa.Commw.Ct.2008). The Supreme Court of Pennsylvania affirmed both taxations. *See Nader*, 905 A.2d at 459; *In re Rogers*, 594 Pa. 20, 934 A.2d 696, 696 (2007).[9]

Plaintiffs allege other non-major party candidates, specifically Hagan Smith, Marakay Rogers, and Ken V. Krawchuk, either refused to submit or withdrew their nomination papers because of the threat they would be taxed with costs and fees. They ran as write-in candidates. Plaintiffs contend the candidates' chances for success were impaired when, in 2006, officials in nine Pennsylvania counties did not compute and certify the write-in votes and, in 2008, officials in seven counties did not compute and certify write-in votes.

In affirming the assessment of costs in *Nader*, the Pennsylvania Supreme Court found the provision allowing the assessment of costs did "not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny."[10] *Nader*, 905 A.2d at 459. The *Nader* court stated,

---

tion or paper be set aside.... If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside.... In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just...."

8. If the private parties lose, the candidate can receive costs from the challenger. *In re Farnese*, 948 A.2d 215 (Pa.Commw.Ct.2008) (assessing costs against private individuals who unsuccessfully challenge a candidate's petition).

9. On July 10, 2008, Pa. Attorney General Thomas Corbett charged employees of the Pennsylvania House Democratic Caucus with criminal conspiracy, theft, and conflict of interest, including allegations the challenges to the 2004 and 2006 non-major party candidate nominations were prepared by these employ-

ees using funds and resources misappropriated from the taxpayers. Amended Complaint at ¶ 39. Following these allegations, the Commonwealth Court refused to set aside the prior taxation of costs. *Id.* On August 17, 2009, the Pennsylvania Supreme Court affirmed the decision relating to Nader. Romelli's appeal is still pending.

10. The court noted the candidate "provided no evidence to show how the assessment of costs, following a finding by the Commonwealth Court that nearly two-thirds of the signatures on the nomination papers were invalid, penalized their exercise of free speech." *Nader*, 905 A.2d at 459. The Commonwealth Court of Pennsylvania noted some outrageous examples of signatures, including "'Mickey Mouse', 'Fred Flintstone,' 'John Kerry,' and the ubiquitous 'Ralph Nader.'" *Id.* at 458 (citing Commonwealth Court, Oct. 13, 2004, Consolidated Findings, Opinion, and Order at 14). In addition, the petitions contained "thousands of names that were created at random and then randomly assigned to either existent or non-existent addresses by the circulators." *Id.*

"[e]ven if the statute did burden ballot access, which it did not, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections." *Id.* Both the *Nader* and *Rogers* courts noted "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Rogers,* 942 A.2d at 929 (quoting *Nader,* 905 A.2d at 460); *Nader,* 905 A.2d at 459 (quoting *Burdick v. Takushi,* 504 U.S. 428, 440 n. 10, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)).[11]

Plaintiffs' claim the *Nader* and *Rogers* decisions "chilled" the rights of future candidates who might attempt to gain access to the ballot. To them, the assessed costs are unconstitutional because they impose a monetary barrier to ballot access and because the statute does not provide notice of when costs will be assessed. This, they contend, is in violation of the Due Process clause.[12]

The three counts of the complaint attempt to state bases for constitutional challenges and to prescribe methods of relief. Count I of Plaintiffs' amended complaint alleges § 2872.2 "independently and in conjunction with other provisions of the Pennsylvania Election Code, [is] unconstitutional as applied to Plaintiffs, because it impermissibly burdens and chills Plaintiffs exercise of freedoms guaranteed to them by the First Amendment, Fourteenth Amendment, Qualifications Clauses and elsewhere in the United States Constitution, and because it subjects them to such burdens without notice or limitation, in violation of their right to due process of law guaranteed by the Fourteenth Amendment." Count II alleges § 2937 "independently and in conjunction with other provisions of the Pennsylvania Election Code, [is] unconstitutional as applied to Plaintiffs, because it impermissibly burdens and chills Plaintiffs exercise of freedoms guaranteed to them by the First Amendment, Fourteenth Amendment, Qualifications Clauses and elsewhere in the United States Constitution, and because it subjects them to such burdens without notice or limitation, in violation of their right to due process of law guaranteed by the Fourteenth Amendment." Amended Complaint at ¶ 50. Count III of Plaintiffs' amended complaint requests an injunction providing the Executive Defendants "take any and all measures necessary to ensure that votes validly cast pursuant to Section 2936(a) are accurately and completely computed and certified for each candidate, as required by Section 3155." Amended Complaint at ¶ 64.

## II. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. *Bell Atlantic Corp. v. Twom-*

---

11. Plaintiffs claim they are not challenging the state court decisions in *Nader,* 905 A.2d 450, 455 (Pa.2006) and *Rogers,* 942 A.2d 915, 933 (Pa.Super.Ct.2008), nor could they in a federal district court. *See Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d Cir.1993) (federal courts should presume completed state court proceedings correctly resolved federal issues presented); *see also Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103

S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal district court is without authority to review final determinations of state courts).

12. *See* Plaintiffs' Response in Opposition to the Motion to Dismiss the Amended Complaint Filed by Defendant Justices, Defendant Judges and Defendant Johns and Krimmel at 3–5, *Constitution Party of Pa. v. Cortes,* No. 09–1691 (E.D. Pa. filed July 20, 2009).

*bly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To determine whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.*; *see also D.P. Enters. v. Bucks County Cmty. Coll.,* 725 F.2d 943, 944 (3d Cir. 1984).

## III. Article III Limits the Power of the Federal Courts to Adjudicate Only in Cases or Controversies

"Article III of the Constitution limits the federal judicial power to 'Cases' or 'Controversies.'" *Khodara Envtl., Inc. v. Blakey,* 376 F.3d 187, 193 (3d Cir.2004) (quoting *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 551, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996)). "Courts enforce the case-or-controversy requirement through the several justiciability doctrines," including "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137 (3d Cir.2009) (citations omitted). The standing and ripeness doctrines are related, as "[e]ach is a component of the Constitution's limitation of the judicial power to real cases and controversies." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir.1994). Ripeness determines when a proper party may bring an action and standing determines who may bring the action. *Id.* (quoting *Smith v. Wis. Dep't of*

*Agric., Trade & Consumer Prot.,* 23 F.3d 1134, 1141 (7th Cir.1994)); *see also, Smith,* 23 F.3d at 1141 (noting "[i]f no injury has occurred, the plaintiff can be told either that she cannot sue, or that she cannot sue yet").

Standing ensures "plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant ... [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on ... [their] behalf.'" *Khodara Envtl., Inc.,* 376 F.3d at 193 (quoting *Joint Stock Soc'y v. UDV N. Am., Inc.,* 266 F.3d 164, 175 (3d Cir.2001)) (alterations in original). In contrast, "[t]he ripeness doctrine serves to 'determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Envtl., Inc.,* 376 F.3d at 196 (quoting *Peachlum v. City of York,* 333 F.3d 429, 433 (3d Cir.2003)).

A court is required to raise issues of standing and ripeness if not raised by the parties. *Addiction Specialists Inc. v. Twp. of Hampton,* 411 F.3d 399, 405 (3d Cir.2005) (quoting *Steele v. Blackman,* 236 F.3d 130, 134 n. 4 (3d Cir.2001) (court required to raise the issue of standing)); *County Concrete Corp. v. Town of Roxbury,* 442 F.3d 159, 163–64 (3d Cir.2006) (quoting *Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 535 (3d Cir.1988) (court required to raise the issue of ripeness)).[13] In addition, the plaintiff must

---

**13.** The judicial defendants alleged the claims against them should be dismissed because "[a] suit against a judge who acted in his or her adjudicatory capacity lacks the necessary requirement of justiciable controversy." *See* Judicial Defendants Memorandum at 3 (citing *Bauer v. Texas,* 341 F.3d 352, 359 (5th Cir. 2003)). The executive defendants alleged the claims against them should be dismissed be-

cause the plaintiffs' claims were foreclosed by *Rogers v. Corbett,* 468 F.3d 188 (3d Cir.2006), Executive Defendants' Memorandum at 9–10, the assessment of fees does not violate the First and Fourteenth Amendments, *id.* at 11–16, and the executive defendants are not proper parties because the do not initiate, or participate in, the hearings, *id.* at 17–20.

allege facts invoking the court's jurisdiction. *Presbytery of New Jersey*, 40 F.3d at 1462 (citing *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)).

Plaintiffs lack standing to raise the constitutional issues. In addition, the controversy is not ripe for federal review. Accordingly, defendants' motions will be granted, and plaintiffs' complaint will be dismissed.

## A. Standing to Seek Injunctive Relief

■ Standing ensures "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, — U.S. —, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). To establish standing under Article III of the Constitution, a plaintiff seeking injunctive relief must demonstrate the following three elements: (1) he "suffered a 'concrete,' 'particularized' injury-in-fact, which must be 'actual or imminent, not conjectural or hypothetical;'" (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "a favorable decision likely would redress the injury." *Toll Bros., Inc.*, 555 F.3d at 137–38 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))

### 1) *Injury–in–Fact*

■ To establish an injury-in-fact the plaintiff "must suffer a palpable and distinct harm," *Toll Bros., Inc.*, 555 F.3d at 138, and the harm "must affect the plaintiff in a personal and individual way," *id.* (citing *Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. 2130).

■ Plaintiffs fail to allege a threat of injury that is actual and imminent. Plaintiffs allege potential candidates' right to ballot access is chilled because of the possibility of assessed costs. This threat, however, is "conjectural or hypothetical," not "actual and imminent." Plaintiffs allege non-major party candidates have been assessed costs in the past. This prior assessment, however, does not establish the plaintiff parties' future candidates will be assessed costs. Moreover, the Pennsylvania courts, in the two cases assessing sanctions against non-major party candidates, found the candidates had participated in fraud, bad faith, or similar inappropriate conduct prior to assessing costs. *Nader*, 905 A.2d at 455; *Rogers*, 942 A.2d 915, 930–31 (Pa.Super.Ct.2008). Plaintiffs make no allegation a court will access costs against a candidate who acts in good faith.[14] *See Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 167 (3d Cir.2007) (plaintiff failed to establish injury-in-fact where he did not establish a sufficient likelihood he would be personally injured by the amendments).

### 2) *Traceability*

■ To establish traceability "[t]he plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plain-

---

**14.** Plaintiffs claim the Commonwealth Court cited Romanelli's failure to ensure nine people were present on his behalf for every day of the proceedings and his "disingenuousness" as justification for the sanction. Amended Complaint at ¶ 36. The court opinion, however, found the candidate failed to comply with court orders, and his "cumulative disingenuousness in these proceedings ha[d] crossed the line into bad faith." *In re Nomination Paper of Rogers*, 914 A.2d 457, 468–69 (Pa. Commw.Ct.2006).

tiff's injury." *Toll Bros., Inc.*, 555 F.3d at 142 (citing *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). Unlike the injury-in-fact prong, which "focuses on whether the plaintiff suffered harm, . . . the traceability prong focuses on who inflicted that harm." *Id.* (emphasis deleted). An indirect causal relationship will suffice if "there is 'a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.'" *Id.* (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)).

■ Even if plaintiffs had alleged a sufficient injury-in-fact, they have failed to show the injury can be traced to an action of the defendants. Neither the judicial nor executive defendants can initiate a suit challenging a candidate's nomination paper. *See* 25 Pa. Stat. Ann. § 2937. Only private individuals may challenge a non-major party candidate's nomination paper. If the paper is dismissed, a state court could require the candidate to pay costs "as [the court] shall deem just." 25 Pa. Stat. Ann. § 2937; *Nader*, 905 A.2d at 458. Plaintiffs have not alleged the defendants have the power to challenge a nomination paper and have not alleged sufficient facts to establish defendants have threatened, or could threaten, plaintiffs with an assessment of costs absent a challenge to a nomination paper. *See* Amended Complaint.

Moreover, neither the judicial nor executive defendants have the power to change the law. The Justices and Judges adjudicate claims brought by private parties who challenge the nomination paper under the statute, and Mr. Johns and Mr. Krimmel merely process the court's orders. The Executive Defendants simply administer the process created by statute.

### 3) *Redressability*

■ Redressability "is 'closely related' to traceability, and the two prongs often overlap." *Toll Bros., Inc.*, 555 F.3d at 142 (quoting *Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 73 (3d Cir.1990)). "[T]raceability looks backward (did the defendants cause the harm?), redressability looks forward (will a favorable decision alleviate the harm?)." *Id.* The redressability prong "requires a showing that 'the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Redressability does not "demand . . . mathematical certainty. It is sufficient for the plaintiff to establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Id.* (quoting *Vt. Agency of Natural Res.*, 529 U.S. at 771, 120 S.Ct. 1858).

■ A decision would not redress any harm and would not result in "specific relief" to anyone. Plaintiffs maintain an order from this court would prevent the courts from continuing to unconstitutionally assess costs. As the case is presented, however, any opinion issued would be an advisory opinion, which would not redress any harm. *See N.J. Peace Action v. Obama*, 2009 WL 1416041, at *5 (opinion would be "an advisory opinion not sufficient to redress any of Plaintiffs' claimed injuries").

■ Courts are "without power to give advisory opinions." *Rhone–Poulenc–Surfactants and Specialties, L.P. v. C.I.R.*, 249 F.3d 175, 182 (3d Cir.2001) (quoting *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)). It is the court's "considered practice not to decide abstract, hypothetical or contingent questions." *Id.* (quoting *Alabama State Fed'n of Labor*, 325 U.S. at 461, 65 S.Ct. 1384). Any opinion addressing plaintiffs claims would be advisory. It would be based on a hypothetical set of

facts, without sufficient information to support findings. *See PSA, LLC v. Gonzales,* 271 Fed.Appx. 218, 220 (3d Cir.2008) (actions cannot result in an "opinion advising what the law would be on a hypothetical set of facts") (quoting *Step–Saver Data Sys., Inc. v. Wyse Technology Software Link, Inc.,* 912 F.2d 643, 649 (3d Cir. 1990)). The court would have to assume a nomination paper would be challenged, the nomination paper would be held invalid, the challenger would seek costs, and the costs would be assessed.

Therefore, plaintiffs lack standing to request injunctive relief.

### B. Standing to Seek Declaratory Relief

"A plaintiff seeking a declaratory judgment must possess constitutional standing but need not have suffered 'the full harm expected.'" *Khodara Envtl., Inc.,* 376 F.3d at 193 (quoting *The St. Thomas–St. John Hotel & Tourism Ass'n v. Virgin Islands,* 218 F.3d 232, 240 (3d Cir.2000)). A plaintiff seeking a declaratory judgment "has Article III standing if 'there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *The St. Thomas–St. John Hotel & Tourism Ass'n,* 218 F.3d at 240).

Plaintiffs fail to establish the parties have adverse interests or a substantial controversy of sufficient immediacy and reality to warrant declaratory relief. Neither the judicial nor executive defendants can initiate a suit challenging a non-major party petition, *see* 25 Pa. Stat. Ann. § 2937, and neither can change the law. In addition, plaintiffs fail to establish a sufficient danger costs will be unconstitutionally assessed against a non-major party candidate. *See supra* Part III.A.

Accordingly, plaintiffs lack standing to seek declaratory relief.

### C. Ripeness of the Injunctive Relief Request

"Various considerations 'underpin the ripeness doctrine,' including whether the parties are in a 'sufficiently adversarial posture to be able to present their positions vigorously,' whether the facts of the case are 'sufficiently developed to provide the court with enough information on which to decide the matter conclusively,' and whether a party is 'genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.'" *Khodara Envtl., Inc.,* 376 F.3d at 196 (quoting *Peachlum,* 333 F.3d at 433–34). To determine whether a case is ripe, courts examine: "(1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Peachlum,* 333 F.3d at 433–34). "The principle consideration is whether the record is factually adequate to enable the court to make the necessary legal determinations. The more that the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe." *Artway v. Attorney Gen. of State of N.J.,* 81 F.3d 1235, 1249 (3d Cir.1996).

#### 1) *Fitness*

"The fitness question ... requires an assessment of whether the issues presented are 'purely legal,' whether the agency action is final ..., and whether 'further factual development would 'significantly advance our ability to deal with the legal issues presented.'"' *Univ. of Med. and Dentistry of N.J. v. Corrigan,* 347 F.3d 57, 68 (3d Cir.2003) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 812, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)).

Simply stated, there is no case here. No factual development has oc-

curred and no concrete factual dispute exists. There is no pending dispute and no challenge to a nomination paper. Any opinion would be advisory, based on hypothetical facts and speculation. *See Rhone–Poulenc–Surfactants and Specialties, L.P.*, 249 F.3d at 182. Without factual development, I am unable to address the legal issues presented. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 812, 123 S.Ct. 2026 (noting, although the question presented was purely legal, and constituted "final agency action," "further factual development would 'significantly advance [the court's] ability to deal with the legal issues presented' ").

### 2) *Hardship*

■■■ "The second prong of the ripeness inquiry is whether deferral of judicial review will create an immediate and significant hardship for the parties and, if so, whether this hardship outweighs the unfitness for review." *Turnage v. U.S. Parole Comm'n*, 157 Fed.Appx. 507, 508 (3d Cir. 2005) (citing *Felmeister*, 856 F.2d at 537–38).

Withholding judgment will not present a hardship. If a private party challenges the nomination paper of a non-major party candidate and requests costs, the candidate can challenge the constitutionality of such costs in state court. Plaintiffs' argument that future candidates' rights are chilled ignores that the prior assessments included a finding of bad faith. Plaintiffs fail to establish a candidate who acts in good faith will be assessed costs. *See supra* Part III.A.1. Their allegation candidates have not submitted nomination papers because they fear an assessment of costs is not sufficient to establish hardship.

The "controversy," therefore, is not ripe for federal review.

### D. Ripeness for the Declaratory Relief Request

■■■ Because declaratory judgments are usually sought before "a completed injury has occurred," courts apply a "somewhat 'refined' test" to determine ripeness. *Khodara Envtl., Inc.*, 376 F.3d at 196 (quoting *Pic–A–State Pa. Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir.1996)). "Thus, when 'determining whether to engage in pre-enforcement review of a statute in a declaratory judgment action,' [courts] look to '(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment.' " *Id.* (quoting *Pic–A–State Pa., Inc.*, 76 F.3d at 1298).

### 1) *Adversity*

■■■ For adversity to exist "the defendant must be so situated that the parties have adverse legal interests." *Presbytery of New Jersey*, 40 F.3d at 1463 (quoting *Step–Saver Data Sys., Inc.*, 912 F.2d at 648). "[T]here must be a substantial threat of real harm and ... the threat 'must remain real and immediate throughout the course of the litigation.' " *Id.* (quoting *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir.1990)).

■■■ Plaintiffs have not established adversity. As discussed above, plaintiffs fail to establish the parties have adverse interests. *See supra* Part III.A.2. Neither the judicial nor executive defendants can initiate a suit challenging a candidate's nomination paper, *see* 25 Pa. Stat. Ann. § 2937, and the judicial and executive defendants do not have the power to change the law.

In addition, plaintiffs fail to establish there is a "substantial threat of real harm." *See supra* Part III.A.1. Although prior candidates who acted in bad faith were assessed costs, plaintiffs have not established the plaintiff parties' future candidates will be assessed costs, especially if the candidates act in good faith.

### 2) Conclusiveness

"Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." *PSA, LLC,* 271 Fed.Appx. at 220 (quoting *NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 344 (3d Cir.2001)). "All actions must be 'based on a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts.'" *Id.* (quoting *Step–Saver,* 912 F.2d at 649).

Several events must occur before any of the plaintiffs' rights are affected. A non-major party candidate would have to attain the necessary signatures on a nomination paper. Then, someone (notably, none of the defendants) would have to file a challenge to the nomination paper. Finally, a successful challenge would need to cause the Pennsylvania courts to charge the candidate fees and costs. Along the way, the Pennsylvania court would have to rule that the candidate corrupted the process by submitting bogus signatures. None of this has happened. None of this will happen imminently. The parties really have no context for their assertion of rights.

Any opinion issued would be an advisory opinion, at best. *See* Part III.A.3; *Rhone–Poulenc–Surfactants and Specialties, L.P.,* 249 F.3d at 182 (courts are "without power to give" advisory opinions) (quoting *Alabama State Federation of Labor,* 325 U.S. at 461, 65 S.Ct. 1384). There is no present controversy, no pending challenge to a nomination paper, and the opinion would not provide specific relief to anyone. Therefore, plaintiffs fail to establish conclusiveness.

### 3) Practical Utility

"Practical utility goes to 'whether the parties' plans of actions are likely to be affected by a declaratory judgment,'" *NE Hub Partners, L.P.,* 239 F.3d at 344 (quot-

ing *Step–Saver,* 912 F.2d at 649 n. 9), and considers the hardship to the parties of withholding judgment, *id.* at 344–45. A declaratory judgment "must be of some practical help to the parties. The Declaratory Judgments Act was enacted to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Id.* (quoting *Travelers Ins. Co. v. Obusek,* 72 F.3d 1148, 1155 (3d Cir.1995)).

Plaintiffs fail to establish the practical utility factor. Withholding judgment will not present a hardship. *See supra* Part III.C.2. Any opinion issued would be no more than a general discussion of whether the provisions are constitutional and it would be of little help to Pennsylvania courts or executives attempting to comply with an order I might issue. That any such opinion would not be grounded in facts arising from a dispute between parties renders the "practical utility" even more remote.

Accordingly, the controversy is not ripe for declaratory relief.

## IV. The State Court Opinions

Although the plaintiffs argue they are not challenging the state court decisions in *Nader* and *Rogers,* it is difficult to distinguish between the current case and a challenge to the *Nader* and *Rogers* opinions, which allowed an assessment of costs against non-major party candidates. *Nader* and *Rogers* addressed the constitutionality of § 2937 based on costs assessed against prior candidates. *See Nader,* 905 A.2d at 459; *Rogers,* 942 A.2d at 929. Plaintiffs request I find § 2937 unconstitutional, arguing the statute, and the court's prior assessment of costs, chills non-major party candidates' First Amendment rights. Although the courts in *Nader* and *Rogers* did not specifically address whether the statute would chill participation, they did find the provision allowing the assessment

of costs constitutional. *See Nader,* 905 A.2d at 459; *Rogers,* 942 A.2d at 929. The current case is, in essence, an improper challenge to these state court determinations. *See Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d Cir.1993) (federal courts should presume complete state court proceedings correctly resolved federal issues presented); *see also District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal district court is without authority to review final determinations of state courts).

If a private party challenges the nomination paper of a non-major party candidate and requests costs, the candidate can challenge the constitutionality of such costs in state courts. This would provide the state court with a specific set of facts to address the constitutional issues. In addition, it would provide the state court an opportunity to interpret the state statute, and such interpretation may alter the question presented. *See Renne v. Geary,* 501 U.S. 312, 323, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (quoting *Babbitt v. Farm Workers,* 442 U.S. 289, 306, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)) (noting granting the state court an opportunity to interpret a state statute can "materially alter the question to be decided.").[15]

For the reasons discussed above, I will dismiss plaintiff's complaint for failure to present a case or controversy, as required by Article III of the Constitution.

An appropriate order follows.

### ORDER

**AND NOW,** this 31st day of March, 2010, upon consideration of motion to dismiss plaintiffs' amended complaint filed on behalf of the Justices of the Supreme Court of Pennsylvania, the Judges of the Commonwealth Court of Pennsylvania, Charles W. Johns, Prothonotary of the Supreme Court of Pennsylvania, and Michael F. Krimmel, Chief Clerk of the Commonwealth Court of Pennsylvania (Doc. # 9), plaintiffs' response thereto (Doc. # 12), defendants Pedro A. Cortes, Chet Harhut, and Thomas Corbett's motion to dismiss the amended complaint (Doc. # 17), plaintiffs' response thereto (Doc. # 19), plaintiffs' cross-motion to stay action against the judicial defendants and incorporated brief in support (Doc. # 14), and the judicial defendants' response thereto (Doc. # 16), it is hereby **ORDERED** that:

1. The defendants' motions (Doc. # 9 & 17) are GRANTED;

2. The plaintiffs' cross motion (Doc. # 14) is DISMISSED as moot; and

3. This case shall be marked closed for statistical purposes.

### *MEMORANDUM*

The Constitution Party of Pennsylvania, the Green Party of Pennsylvania, and the Libertarian Party of Pennsylvania, and the chairs of the three parties, filed a motion for reconsideration of the court's opinion and order granting defendants' motions to dismiss. I will deny the motion.

### I. *BACKGROUND*

On March 31, 2010, the defendants' motions to dismiss plaintiffs' amended complaint were granted.[1] The amended com-

---

**15.** Plaintiffs allege the statute is unconstitutional, in part, because there are no standards to determine when costs will be assessed. Allowing a state court to address whether the provision violates due process, or is otherwise unconstitutional, will provide the state court an opportunity to create standards.

**1.** The Justices of the Supreme Court of Pennsylvania, the Judges of the Commonwealth Court of Pennsylvania, Charlese W. Johns,

plaint alleged § 2872.2,[2] § 2937,[3] and § 2963(a)[4] of the Pennsylvania Election Code were unconstitutional. The motions to dismiss were granted because plaintiffs lacked standing to bring the constitutional claims and because plaintiffs' claims were not ripe for federal review.[5] I found the amended complaint failed to present a case or controversy as required by Article III of the United States Constitution. *See* Memorandum at 9.

Plaintiffs argue their motion for reconsideration should be granted because the memorandum opinion addressing defendants' motions to dismiss failed to discuss counts I and III of plaintiffs' amended complaint, failed to address authority supporting plaintiffs' position that a state may not condition participation in elections upon an ability to pay, and misapplied the *Rooker–Feldman* doctrine.[6]

## II. *STANDARD*

"The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Lazaridis v. Wehmer,* 591 F.3d 666, 669 (3d Cir.2010) (quoting *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999)). A court should grant a motion for reconsideration "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion ...; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's*

Prothonotary of the Supreme Court of Pennsylvania, and Michael F. Krimmel, Chief Clerk of the Commonwealth Court of Pennsylvania filed a motion to dismiss on July 2, 2009. Pedro Cortes, Chet Harhut, and Thomas Corbett filed a motion to dismiss on August 24, 2009.

**2.** 25 P.S. § 2872.2(a) provides: "(a) Notwithstanding any other provision in this act to the contrary, minor political parties shall nominate all of their candidates for the offices to be filled at the ensuing November election pursuant to section 903 in accordance with the requirements of section 951, other than subsection (e)(6) and (7) thereof, and section 954, and shall obtain the required signatures during the same time frame available to political bodies. Minor political parties shall be subject to the provisions of this act applicable to political parties with respect to special elections, voter registration forms, substituted nominations and all other purposes except as otherwise expressly provided in this section ...."

**3.** 25 P.S. § 2937 provides: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to

the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside.... If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside.... In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just...."

**4.** 25 P.S. § 2963(a) provides a mechanism for voters to vote for a candidate not on the ballot by writing the name of the candidate on the space provided on the ballot.

**5.** *See* Memorandum at 9, *The Constitution Party of Pennsylvania v. Cortes,* 09–1691 (E.D. Pa. filed Mar. 31, 2010) [hereinafter Memorandum].

**6.** Memorandum in Support of Plaintiffs' Motion for Reconsideration of the Court's April 1, 2010 Opinion and Order at 1, *The Constitution Party of Pennsylvania v. Cortes,* No. 09–1691 (E.D. Pa. filed Apr. 15, 2010) [hereinafter Plaintiffs' Memorandum].

*Seafood Café ex rel. Lou–Ann, Inc.*, 176 F.3d at 677 (quoting *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)).

### III. *COUNTS I AND III*

 Plaintiffs allege the memorandum opinion granting the defendants' motions to dismiss failed to address count I and count III of the amended complaint. Plaintiffs' Memorandum at 2. The memorandum opinion does not contain a specific, in-depth discussion of counts I and III, yet the analysis of count II applies to the claims in count I and count III.

Count II alleges § 2937 is unconstitutional because it authorizes Judges to tax costs and fees against a minor party or independent candidate, "without notice or limitation, subject only to the ... Judges' discretion."[7] Count II alleges courts assessed costs pursuant to § 2937 against minor party and independent candidates in the 2004 and 2006 elections. *See* Amended Complaint at ¶ 54. It alleges § 2937 fails to provide notice of when courts will assess taxes, chills plaintiffs' First Amendment rights, and violates the Due Process Clause. *Id.* at ¶ 57.

Count I challenges the constitutionality of § 2872.2 of the Pennsylvania Election Code. Section 2872.2 requires minor parties, defined as political parties whose membership accounts for less than fifteen percent of registered voters, to conduct a new petition drive each election cycle. *See* Amended Complaint at ¶ 43. Count I alleges § 2872.2 arbitrarily discriminates against and imposes a severe and unnecessary burden on non-major party candidates because of the alternate set of procedures established for those candidates. *Id.* at ¶¶ 43–44. "Specifically, [§ ] 2937 subjects Minor Party and independent candidates to the threat they will be taxed with litigation costs and fees, including attorney fees, without limitation, if they submit nomination petitions as required by [§ ] 2911(b). In the alternate, the Pennsylvania Election Code subjects Minor Party and Independent candidates to the threat that votes validly cast for them pursuant to [§ ] 2937(a) will not be counted...." *Id.* at ¶ 45. Count I also maintains that candidates have been taxed with more than $80,000 in costs and fees. *Id.* at ¶ 46.

Count III of the amended complaint challenges § 2963(a), which authorizes voters to cast a write-in vote for any candidate for public office, and provides a mechanism for casting such votes. Amended Complaint at ¶ 60. It alleges this is the only alternative for non-major party candidates and their supporters "within the electoral arena free from the financial burdens that § 2937 threatens to impose upon such candidates." *Id.* at ¶ 63. Count III alleges counties routinely fail to compute and certify votes validly cast for non-major party candidates. *Id.* at ¶ 62.

Both count I and count III rely, in part, on the allegation that § 2937 places unconstitutional financial burdens on minor party and independent candidates. The memorandum opinion addressing the motions to dismiss found that plaintiffs lacked standing to raise such a claim and that the claim was not ripe. The standing and ripeness analysis applies to all counts of the complaint. Although each count states a separate, discrete basis for the plaintiffs' constitutional challenge to the Pennsylvania Election Code, the standing and ripeness concerns are common to all counts. The memorandum opinion adequately addressed count I and count III and plain-

---

**7.** Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief at ¶ 53, The *Constitution Party of Pennsylvania v. Cortes,* No. 09– 1691 (E.D. Pa. filed June 19, 2009) [hereinafter Amended Complaint].

tiffs have failed to establish a clear error of law or fact.

## IV. *COUNT II*

 Plaintiffs' "clear error of law" concerns the failure of the memorandum opinion to recognize authority establishing that § 2937 unconstitutionally requires plaintiffs to assume the risk of incurring substantial costs to defend nomination petitions. *See* Plaintiffs' Memorandum at 4. Plaintiffs allege granting the motions to dismiss violates a rule which requires a court to strike down an election law if the law imposes a mandatory financial burden. *Id.* at 5. They rely on the cases cited in their response to the executive defendants' motion to dismiss.[8] *See id.* at 4–5 (citing *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1996), *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), and *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), and various Court of Appeals and district court opinions); Plaintiff's Response to Executive Defendant's Motion to Dismiss at 6–9 (same).

Plaintiffs claim the opinion went "against the weight of authority" to hold the complaint failed to raise a case or controversy. Plaintiffs' Memorandum at 5. They contend, because of the cited cases, it was clear error to find the injury was conjectural or hypothetical, and to find the opinion would be an advisory opinion. *Id.* They believe § 2937 chills their ability to recruit candidates and a declaratory judgment would redress harm by removing the impermissible financial burden. *Id.* at 6. Plaintiffs maintain it was inconsistent with binding precedent to find no substantial threat of real harm. *Id.*

Plaintiffs point to the possibility that costs will be assessed against a candidate who acted in good faith because the statute fails to distinguish between taxable and non-taxable conduct. Plaintiffs' Memorandum at 7. They once again allege a lack of bad faith in the state court cases which assessed costs. They say the "fraud" was nothing more than a handful of phony signatures by pranksters or saboteurs. *Id.*

Plaintiffs have not established a clear error of law or fact. Although couched in terms of clear error, plaintiffs' motion for reconsideration essentially re-argues the position stated in the complaint and in the responses to the motions to dismiss, i.e., the statute is unconstitutional. Plaintiffs cite cases which find unreasonable financial barriers for candidates are unconstitutional, but provide no case law to support their contention that plaintiffs have standing or that their claims are ripe. In addition, plaintiffs fail to establish any error in my reliance on the state court findings that the candidates acted with bad faith when defending their nomination papers.

## V. *Rooker–Feldman*

 The *Rooker–Feldman* doctrine provides that "lower federal courts are precluded from exercising appellate jurisdiction over final state court judgments." *Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006). It "is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

---

8. *See* Plaintiffs' Response in Opposition to the Motion to Dismiss the Amended Complaint filed by Defendant Corbett, Defendant Cortes and Defendant Harhut at 5–12, *Constitution Party of Pennsylvania v. Cortes*, No. 09–1691 (E.D. Pa. filed Sept. 10, 2009).

In their motion for re-consideration, the plaintiffs essentially re-argue that they are seeking prospective and declaratory relief, not challenging the state court judgments in *In re: Nomination Paper of Ralph Nader,* 588 Pa. 450, 905 A.2d 450, 459 (2006) and *In re Nomination Paper of Rogers,* 942 A.2d 915, 929 (Pa.Super.Ct.2008). *See* Plaintiffs' Memorandum at 9. Requiring plaintiffs to return to state court, they maintain, subjects them to the very harm they wished to avoid by prospective relief. *Id.*

I found the plaintiffs' claims were "in essence, an improper challenge to the state court" opinions in *Nader* and *Rogers. See* Memorandum at 21. It is no surprise that the plaintiffs disagree or that they consider it to be error.

The *Nader* and *Rogers* courts did not address whether the assessment of costs would chill participation in elections. They did, however, find the provision allowing the assessment of costs constitutional. *See Nader,* 905 A.2d at 459; *Rogers,* 942 A.2d at 929. In addition, they found the assessment of costs against the candidates in *Nader* and *Rogers* constitutional. Plaintiffs' constitutional claims rely on their argument that the *Nader* and *Rogers* courts improperly found the candidates acted in bad faith and improperly assessed costs against the candidates. To find for the plaintiffs would require a determination that the state court findings were error. In a very real sense, to find for the plaintiffs will be to exercise appellate jurisdiction over final state court judgments.

Plaintiffs have failed to establish a clear error of law or fact occurred in my discussion of the state court decisions.

An appropriate order follows.

### ORDER

**AND NOW,** this 16th day of July, 2010, upon consideration of plaintiffs' motion for reconsideration of the court's opinion and order granting defendants' motions to dismiss (Doc. # 25), brief of the justices of the Supreme Court of Pennsylvania, the Judges of the Commonwealth Court of Pennsylvania, Charles W. Johns, Propthonotary of the Supreme Court, and Michael F. Krimmel, Chief Clerk of the Commonwealth Court of Pennsylvania in opposition to plaintiffs' motion for reconsideration (Doc. # 26), and brief of defendants Cortes, Harhut and Corbett in opposition to plaintiffs' motion for reconsideration (Doc. # 27), it is hereby **ORDERED** that plaintiffs' motion is DENIED for the reasons set forth in the accompanying memorandum.